WILMINGTON MEDICAL CENTER, INC., a corporation of the State of Delaware; Richard S. Gebelein, as Attorney General for the State of Delaware; Martin Gibbs, M.D., and The Board of Medical Practice of the State of Delaware, Defendants, Appellants,

v.

William H. SEVERNS, Plaintiff, Appellee.

Supreme Court of Delaware.

Submitted June 9, 1981.

Decided July 21, 1981.

See also, Del.Super., 421 A.2d 1334.

---

Edward F. Kafader, Deputy Atty. Gen. (argued), Wilmington, for defendants Richard S. Gebelein, Atty. Gen. for State of Del., and The Bd. of Medical Practice of the State of Del.

Thomas Herlihy, III (argued), of Herlihy & Herlihy, Wilmington, for plaintiff.

Before DUFFY, McNEILLY and QUILLEN, JJ.

DUFFY, Justice.

The State of Delaware appeals from an order of the Court of Chancery directing it to pay a fee awarded to a guardian *ad litem*. The questions presented for decision are these: did the Court of Chancery have jurisdiction to order payment of the fee and, if it did, does the doctrine of sovereign immunity bar such an assessment against the State? We conclude that the Trial Court had jurisdiction to award the fee but not against the State and, accordingly, we reverse the judgment.

I.

On December 19, 1979, William H. Severns petitioned the Court of Chancery for appointment as guardian of the person and property of his wife, Mary Reeser Severns, who lay in a coma following an automobile accident.[1] On that same day the Court appointed an attorney, G. Thomas Sandbach, Esquire, as guardian *ad litem* for Mrs.

---

1. A more complete discussion of the facts appears in a prior opinion of this Court. See *Severns v. Wilmington Medical Center, Inc.*, Del.Supr., 421 A.2d 1334 (1980).

Severns, pursuant to 12 *Del.C.* § 3914(b).[2] The issues presented in the petition were the basis for a certification [3] to this Court, *Severns v. Wilmington Medical Center, Inc.*, supra, in which we held, among other things, that under § 3914 the Court of Chancery had the power to appoint Mr. Severns as guardian of the person of his wife. 421 A.2d at 1344–45. As our opinion shows, the issues presented were of first impression in this State and concerned nothing less than medical procedures which were expected to determine whether Mrs. Severns lived or died. See 421 A.2d at 1336, 1344.

After receiving this Court's response to the certified question, the Chancery Court adjudicated the petition for permanent guardianship and, upon a post-hearing application by the guardian *ad litem*, the Court awarded a fee of $10,000 to Mr. Sandbach and ordered the State to pay it. In so doing, the Court reasoned that since Mr. Sandbach had assumed a posture in the litigation in conflict with Mrs. Severns' "apparent desires," it would be inequitable to require that his fee be paid out of her Estate; and, coincidentally, the Court held that, in fairness, the State should bear the responsibility of paying the fee because Mr. Sandbach had supported the State's interest in the preservation of life. The State then docketed this appeal.[4]

## II.

 As to the jurisdictional issue, it is important to place it in context. Specifically, it is our view that the Court of Chancery not only had the power to appoint a guardian *ad litem* under the express language of 12 *Del.C.* § 3914(b) but, given the singular

circumstances of this case, the Court had a duty to do so. *Superintendent of Belchertown State School v. Saikewicz*, Mass.Super. J.Ct., 373 Mass. 728, 370 N.E.2d 417, 433–34 (1977); Barron, *Assuring "Detached but Passionate Investigation and Decision": The Role of Guardians Ad Litem in Saikewicz-type Cases*, 4 Am.J.L. & Med. 111 (1978). We cannot imagine a fact situation in which principles of due process would more clearly compel the appointment of a guardian *ad litem* than this case in which a ruling was sought that was expected to determine whether a comatose person would live or die.[5] Indeed, in every *Severns*-type of case the Court of Chancery must appoint an independent guardian *ad litem* to act for the proposed ward during the proceeding. We so hold.

## A.

 The State contends that, as a matter of law, the Court of Chancery lacked jurisdiction to assess the fee awarded to the guardian *ad litem* and order payment thereof by any party associated with the case. The State says that, except in rare circumstances not present here, the Court of Chancery may award a counsel fee only when authorized by statute or by contract between the parties. *Maurer v. International Re-Insurance Corp.*, Del.Supr., 95 A.2d 827 (1953).

The short answer to that contention is that if a statute is required, there is such a statute. Thus 10 *Del.C.* § 5106 provides that "[t]he Court of Chancery shall make such order concerning costs in every case as is agreeable to equity." The statutory reference to costs includes counsel fees, where

---

2. 12 *Del.C.* § 3914 (b) provides, in relevant part, that "in all cases where a guardian of the person is sought such person shall be entitled to representation by counsel."

3. The procedure for certification of a question of law is governed by Supreme Court Rule 41.

4. The Wilmington Medical Center, Inc., and Martin Gibbs, M.D., are parties to the action but neither has stated a position in this appeal which is solely concerned with the assessment of counsel fees.

5. Courts in other jurisdictions have appointed a guardian *ad litem* under similar circumstances. *In re Spring*, Mass.Supr.Jud.Ct., 80 Mass.A.S. 1209, 405 N.E.2d 115, 117 (1980); *Eichner v. Dillon*, N.Y.App.Div., 73 A.D.2d 431, 426 N.Y. S.2d 517, 525 (1980); *Superintendent of Belchertown State School v. Saikewicz*, 370 N.E.2d at 419; *Matter of Quinlan*, N.J.Supr., 70 N.J. 10, 355 A.2d 647, 651, cert. denied. sub. nom., *Garger v. New Jersey*, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976).

equity requires. *Wilmington Trust Co. v. Coulter,* Del.Ch., 208 A.2d 677, 681–82 (1965); *Delaware Trust Co. v. Everitt,* Del. Ch., 140 A.2d 788, aff'd, 146 A.2d 388, 393 (1958). Thus under settled Delaware law the Court of Chancery had jurisdiction to make an award, and we hold that, under the circumstances of the case, the Court properly exercised its discretion in determining that the guardian *ad litem* was entitled to a fee.[6]

### B.

We turn, then, to the question of who should pay the fee allowed.

The Chancellor determined that, in fairness, Mrs. Severns' Estate should not be required to bear the burden of the fee. There is much to be said for his conclusion but we cannot agree with one aspect of the Chancellor's reasoning: he said that Mr. Sandbach should not be compensated out of the Estate because he had advanced argument contrary to Mrs. Severns' "apparent desires." Her wishes were very much involved in the litigation but, as we read the record, her desires as of the time the accident occurred were not known with the kind of certainty which should bind a guardian *ad litem;* and it would be unfair to determine the guardian *ad litem's* right to compensation on the basis of hindsight at the end of the litigation.

∎∎∎∎ Of more importance, however, a guardian *ad litem's* right to compensation should not necessarily be determined by the position he takes in the litigation. Surely in this pioneering case it was most reasonable for the guardian *ad litem* to explore and assert the right-to-life contentions for the comatose Mrs. Severns and Mr. Sandbach

did just that. On this key issue, unless duplicative of positions already in the record or before the Court, we agree with the view expressed by the Supreme Judicial Court of Massachusetts in *Saikewicz:*

"As an aid to the judge in reaching [his decision], it will often be desirable to appoint a guardian ad litem, sua sponte or on motion, to represent the interests of the person. Moreover, we think it appropriate, and highly desirable, in cases such as the one before us to charge the guardian ad litem with an additional responsibility to be discharged if there is a finding of incompetency. This will be the responsibility of presenting to the judge, after as thorough an investigation as time will permit, all reasonable arguments in favor of administering treatment to prolong the life of the individual involved. This will ensure that all viewpoints and alternatives will be aggressively pursued and examined at the subsequent hearing where it will be determined whether treatment should or should not be allowed."

370 N.E.2d at 433–34.[7] Mr. Sandbach represented Mrs. Severns by being an advocate of right-to-life. He also served a desirable public interest in litigation of significant public importance. Thus, within this context, there are legitimate obligations from both Mrs. Severns and the State. The Chancellor could properly make an equitable judgment that the State should bear the responsibility.

∎∎∎∎ The State contends, however, that the doctrine of sovereign immunity, which is a well-settled principle of law based on the Delaware Constitution, Art. I,

---

**6.** The amount of the award to Mr. Sandbach is not disputed by any party.

**7.** See also *Barron,* supra at 129, which recommends procedures for fostering an adversary process; thus:

"For the purpose of attempting to assure an adversary process in *Saikewicz*-type cases, the present writer recommends the following procedural guidelines:

"1. In every *Saikewicz*-type case, a guardian ad litem is to be appointed to rep-

resent the positions opposed to those taken in the petition.

"2. That guardian ad litem is to see his role solely as that of an advocate for the positions opposed to the petition. He is to investigate, develop, and present evidence for his side, cross-examine opposing witnesses, and make arguments just as he would if he had a competent client who had retained him to oppose the position."

§ 9, bars any award of costs against the State, absent a statutory waiver. We agree. *Donovan v. Delaware Water and Air Resources Comm'n,* Del.Supr., 358 A.2d 717, 723 (1976). Costs in this context includes a counsel fee and/or a fee to an attorney appointed as a guardian *ad litem.* Thus, since there is not a waiver by the State in this case, the Chancellor's decision to assess Mr. Sandbach's fee against the State is erroneous as a matter of law and must be reversed.

### III.

Thus it is that Delaware law, as we must apply it, requires a reversal of the Court of Chancery's decision and that will leave unsettled the fee or compensation issue. And that is most regrettable.

We say this because Mr. Sandbach has earned a fee and he is entitled to be paid. We specifically noted that his work had a public service aspect beyond the interest of the ward for whom he had been appointed; as we have already said, life or death consequences were expected to follow from the decision. And without statutory guidelines of any kind, the impact of certain action or non-action by the Wilmington Medical Center, its staff, the attending physician and others involved with providing health care to Mrs. Severns might well have resulted in civil and/or criminal liability for them. Thus it was essential in the public interest that the vital issues be tested in this case of first impression under circumstances in which someone argued for Mrs. Severns that her life should be sustained. See *Saikewicz,* 370 N.E.2d at 433–34, and *Barron,* supra at 129. In doing that, Mr. Sandbach ensured that the Court would exercise its best judgment and discretion only after all viewpoints were heard. His services, then, were performed not in the interest of Mrs. Severns alone but also in the public interest and, for that reason, we think that he should be compensated from public funds. But, unfortunately the sovereign immunity doctrine bars a judicial order to that effect in this case. And the State has not waived that defense nor is it estopped to assert it.

We commend the case to the General Assembly for its consideration.

The decision below determined Mr. Sandbach's entitlement to a fee, the amount of the fee and the equitable burden of payment; it seems to us that the opinion of the Chancellor is entitled to thoughtful consideration by the General Assembly. But, insofar as the judgment ordered the State to pay, it must be reversed because of the doctrine of sovereign immunity. Permission to pay Mr. Sandbach can come only from the General Assembly.

Reversed.