**LORETTO LITERARY & BENEVOLENT INSTITUTION, et al., Plaintiffs,**

**v.**

**BLUE DIAMOND COAL CO., et al., Defendants.**

Court of Chancery of Delaware, New Castle County.

Submitted Dec. 3, 1981.

Decided March 12, 1982.

John C. Phillips, Jr., Wilmington, and Phillip W. Moore, Washington, D.C., for plaintiffs.

Charles F. Richards, Jr., and Donald A. Bussard, of Richards, Layton & Finger, Wilmington, for defendants.

HARNETT, Vice Chancellor.

The plaintiffs brought this action because of the defendant Blue Diamond Coal Company's delay in recording on its books the transfer of certain shares of Blue Diamond stock owned by the plaintiffs. This is my ruling on the plaintiffs' request for the award of damages—which is denied—and on their request for an award of attorneys' fees—which is granted.

I

The defendants are the Blue Diamond Coal Company ("Blue Diamond") and two of its officers. Blue Diamond is a Delaware corporation engaged in the business of mining coal in the Appalachian regions of Kentucky and Tennessee. At the time this action was brought, Blue Diamond was a publicly traded company with fewer than 500 shareholders and, accordingly, was not required to be registered with the Securities and Exchange Commission.

The plaintiffs are certain religious organizations and individuals who are members of a Coal Company Monitoring Project Coalition. This Coalition actively advocates social and environmental reform within the coal mining industry and they believe that Blue Diamond is one of the principal offenders of what plaintiffs perceive to be an enlightened social and environmental policy. Blue Diamond therefore is the focus of their reformation efforts.

The vehicle chosen by the plaintiffs to advance their ideas was the purchase of Blue Diamond stock in the open market in the hopes that by exercising their shareholder rights they would be able to lobby their social and environmental views to management. Plaintiffs purchased their Blue Diamond shares through a brokerage firm and had the shares held by the broker in nominee accounts.

Shortly thereafter, plaintiffs decided that if Blue Diamond could be forced to register with the Securities and Exchange Commission the mandatory disclosure requirements would facilitate their monitoring of the company. Plaintiffs concluded that if they fractionalized their block of shares among the individual members of the Coalition, Blue Diamond would reach the 500 shareholder threshold which mandates registration with the Securities and Exchange Commission. In order for the plaintiffs to implement their plan, it was necessary to have Blue Diamond transfer these shares on the corporate books to the various plaintiffs, but upon learning that plaintiffs had been the beneficial owners of this block of stock all along, Blue Diamond refused to record the transfer. As an excuse for the failure to register the transfer, Blue Diamond apparently relied upon § 8–401 of the Uniform Commercial Code and claimed that the

request of plaintiff was not rightful or bona fide. 6 *Del.C.* § 8–401(1)(e) (UCC) states in part:

"(1) Where a security in registered form is presented to the issuer with a request to register transfer, the issuer is under a duty to register the transfer as requested if ... (e) the transfer is in fact rightful or is to a bona fide purchaser."

On September 19, 1979, plaintiffs brought this action seeking injunctive relief to compel Blue Diamond to record the transfers. As an affirmative defense, Blue Diamond asserted the defense of unclean hands alleging that plaintiffs conspired to change and alter the business operations of Blue Diamond to the detriment of its shareholders. While citing several incidents, defendants point to one incident in particular where it believes that plaintiffs dissuaded Standard Oil of Indiana from consummating a lucrative merger with Blue Diamond. Plaintiffs, however, deny that they were instrumental in Standard's decision to forego the merger.

At the commencement of pretrial discovery, plaintiffs moved for a protective order arguing that Blue Diamond should be prevented from undertaking any discovery into the area of unclean hands because the defense was without legal basis and was irrelevant. Considering the posture of the case, the liberal scope of discovery and a defendant's right to prepare a defense, no matter how weak, I allowed limited and expedited discovery in this area at Blue Diamond's expense.

Five months later, after engaging in discovery, Blue Diamond decided to record the shares of the plaintiffs on the books of the corporation and thereby mooted plaintiffs' request for injunctive relief. Plaintiffs then moved for damages and attorneys' fees because of the delay in recording the transfers.

## II

As their first basis for a claim for damages, plaintiffs alleged that because their ownership of the shares was not registered on the books of Blue Diamond until recently they were deprived of all the rights incidental to and inherent in the ownership of shares of stock. Specifically, plaintiffs cite their right to inspect books and records of the corporation; the right to notice of shareholder meetings; the right to receive annual corporate reports; the right to vote at annual meetings; and the right to elect directors. Plaintiffs suggest that they are entitled to nominal damages in the amount of $1.00 per share for each day transfer was delayed which would total approximately $143,065.

I am satisfied, however, that the plaintiffs have not suffered any meaningful deprivation of shareholder rights such as would justify a claim for damages. The record clearly demonstrates that as beneficial owners of the stock, plaintiffs could have exercised, through their nominee, any of their shareholder rights at any time if they had so desired. *Trans World Airlines, Inc. v. State ex rel. Porterie*, Del.Supr., 183 A.2d 174 (1962), and *State v. Superior Oil Corp.*, Del.Supr., 13 A.2d 453 (1940). Indeed, the record shows that plaintiffs did exercise some of their shareholder rights in this manner on several occasions. It follows, therefore, that while plaintiffs may have experienced some inconvenience in exercising these rights, they did not suffer any actual deprivation of their shareholder rights. There is therefore no basis to justify an award of damages and plaintiffs' claim for damages under this theory must be denied.

## III

For a second theory of damages plaintiffs claim a pecuniary investment loss, relying on 6 *Del.C.* § 8–401(2) (UCC) which provides:

"Where an issuer is under a duty to register a transfer of a security the issuer is also liable to the person presenting it for registration or his principal for loss resulting from any unreasonable delay in registration or from failure or refusal to register the transfer."

Plaintiffs contend that this provision suggests two standards for the award of dam-

ages—both of which, it is argued, are applicable to this case. The first arises from the phrase, "for loss resulting from any unreasonable delay in registration." Here, plaintiffs contend that they are entitled to any diminution in value of their shares which occurred between the time the shares were presented for registration and the date of actual registration.

The second standard, plaintiffs claim, arises from the concluding phrase, "or from failure or refusal to register the transfer." Here, plaintiffs contend that they are entitled to damages for loss occasioned by the failure or refusal to record the shares without regard to any time factor.

Plaintiffs then combine these two standards and arrive at a computation which they contend reflects the damages they sustained. This computation may be illustrated by plaintiff-Loretto's 81 shares. Plaintiffs contend that Loretto should be entitled to the difference between the original purchase price of its 81 shares—being $19,495.00—and the market price for 81 shares at the time of the registration which was $12,960.00—or a difference of $6,535.00. In addition, plaintiff-Loretto seeks to add its claimed attorney fees of $185,000. to the $19,495. purchase price to arrive at the true cost of the shares for purposes of computing its loss. Plaintiffs fail to state, however, why they base their claim on the value of the stock at the date of purchase rather than on the value at the date they first sought to register the transfer. This novel argument is based on plaintiff's claim that under federal income tax law attorneys' fees incurred while defending title to property should be capitalized as part of the cost basis of the property in order to reduce the taxable gain for income tax purposes on disposition of the property. See *Galewitz v. CIR*, 2nd Cir., 411 F.2d 1374, *cert. den.*, 396 U.S. 906, 90 S.Ct. 221, 24 L.Ed.2d 182 (1969). This computation produces an alleged loss of $191,535—being the $19,495. purchase price plus $185,000. in attorneys' fees, less the $12,960. value at the time of registration. In essence, plaintiffs seek the profit which they could have realized had they sold their shares at a propitious time plus the capitalized value of their attorneys' fees. Tax cases, however, arise from the interpretation of the Internal Revenue Code and do not have much precedential value in other areas of the law.

■ In any event, the plaintiffs ignore the fact that there are two separate and inconsistent remedies available for a wrongful refusal to transfer stock. The aggrieved stockholder may bring an action in law or equity—but not both. See 1 Christy, *Transfer of Stock*, 5th Ed. § 264 (1975); 18 C.J.S., *Corporations* § 438; 18 Am.Jur.2d, *Corporations* § 424; and Annotation, *Remedy for Refusal to Transfer Stock*, 22 A.L. R.2d 12.

In a suit in equity a plaintiff may seek injunctive relief in order to compel recordation. In addition, he may be awarded ancillary damages if he can show an actual loss due to the delay in recordation. *Gasarch v. Ormand Ind., Inc.*, S.D.N.Y., 346 F.Supp. 550 (1972); *Rothberg v. National Banner Corp.*, E.D.Pa., 259 F.Supp. 414 (1966).

In a suit at law, however, a plaintiff may recover the market value of the shares at the date of refusal to record the transfer just as in the ordinary case of conversion. *Siegel v. Riverside Box & Lumber Co.*, N.J. Super., 99 A. 407 (1916). And, while a plaintiff may recover the full value of the stock at law, he may not also retain its title. Thus, a plaintiff must elect his remedy whether to proceed at law for the value of the stock in the law courts, or to proceed in equity seeking to compel recordation and ancillary damages.

Moreover, plaintiffs' reliance on the fact that there are alternate standards provided in 6 *Del.C.* § 8.401(2) (UCC) is of no help to them. The first standard, loss occasioned by unreasonable delay, envisions a situation where the issuer undertakes to register the security but unreasonably delays in effecting the registration. The second standard, loss occasioned by a refusal to transfer, is self-explanatory: it applies when the issuer for a wrongful reason refuses to register the security. Both standards, however, merely describe the type of wrongful con-

duct which is actionable and do not change the rule that a plaintiff must elect a remedy and sue either to compel recordation or for conversion.

■ Plaintiffs, when they filed this action, chose a suit in equity to compel the recordation of the transfer. Thus, they are limited to their actual loss occasioned by the wrongful delay of the defendants in the recording of the transfer and cannot seek damages for the full value of the shares under a theory of conversion. The record, however, fails to show that the plaintiffs have suffered any legally cognizable loss because of this delay. Plaintiffs have at all times owned their stock through their nominee and they could have sold their stock at any time. They have not even claimed, however, that they ever considered a sale. The owner of any stock risks the possibility of both depreciation as well as appreciation. Thus, even if the stock had declined in value between the request for recordation and actual recordation, the depreciation in value could not be a legally cognizable loss unless the plaintiffs in some way had been prevented from consummating a sale they intended to effectuate. But the alienability of plaintiffs' shares has never been interfered with or restricted. See *Rothberg v. National Banner Corp.*, supra; *Riskin v. National Computer Analysts, Inc.*, N.Y. Supr., 62 Misc.2d 605, 308 N.Y.S.2d 985 (1970), *mod. on other grounds*, N.Y.App. Div., 37 A.D.2d 952, 326 N.Y.S.2d 419 (1971).

■ Plaintiffs' use of 6 *Del.C.* § 8–401(2) (UCC) as a basis for a claim for damages equal to their attorneys' fees is also misplaced. The few courts which have dealt with this issue were not persuaded that attorneys' fees are a cognizable loss under § 8–401(1)(e) of the Uniform Commercial Code, nor am I. *Rosenberg v. Nathan Benjamin, Inc.*, 49 Pa.D.&C.2d 188 (1969) and see also: *Riskin v. National Computer Analysts, Inc.*, supra.

### IV

■ Plaintiffs next seek damages on the theory that they suffered a loss because of Blue Diamond's conduct before and during this litigation. I am satisfied, however, that this request is nothing more than a request for punitive damages—which this Court does not have jurisdiction to award. *Beals v. Washington Int'l.*, Del.Ch., 386 A.2d 1156 (1978). Plaintiffs' motion for damages therefore must be denied. IT IS SO ORDERED.

### V

■ Finally, plaintiffs seek reimbursement for the attorneys' fees they have incurred in connection with this litigation. In doing so, plaintiffs cite several statutory and decisional exceptions to the general rule that a party must defray the costs of his own litigation. One of these exceptions is the bad faith of the losing party. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Even without a showing of the existence of bad faith, however, this Court, as a Court of Equity, has jurisdiction to assess attorneys' fees as costs in an appropriate matter although such an award is unusual and is only made where the situation or the equities dictate that such a burden should not fall on the prevailing party. *Wilmington Trust Co. v. Coulter*, Del.Ch. 208 A.2d 677 (1965); *Delaware Trust Co. v. Everitt*, Del.Ch. 140 A.2d 778 (1958), *aff'd.*, Del.Supr., 146 A.2d 388 (1958); *Wilmington Medical Center v. Severns*, Del. Supr., 433 A.2d 1047 (1981). I find that the circumstances and defendants' conduct have been such as to move this Court's discretion to exercise its inherent power to award attorneys' fees in this case.

■ There is no question that plaintiffs lawfully owned their shares of stock and I am satisfied that even if Blue Diamond had been able to prove a conspiracy of the plaintiffs to alter the business practices of Blue Diamond, this would not have constituted unclean hands or any other defense allowable under 6 *Del.C.* § 8–401 (UCC). The record clearly shows that the plaintiffs simply intended to legally exercise routine shareholder rights in order to lobby their views to management with the expectation

of enhancing, not injuring, Blue Diamond. Shareholders have the inherent right to assert their individual interests within their Company, however bizarre, unpopular, or unusual they may be.

There is no evidence in the record that Blue Diamond had any reasonable justification to refuse to transfer the shares to the plaintiffs' names on the books of the corporation. Its refusal was therefore at its own peril. See cases collected at 139 A.L.R. 278. This is not to say that a corporation cannot reasonably investigate a request to transfer shares but a refusal to register a transfer must be based on a legitimate ground supported by some credible evidence. *Kanton v. United Plastics, Inc.*, D.C.N.J., 248 F.Supp. 353 (1965); 12 Fletcher, *Cyclopedia Corporations* (Perm.Ed.) § 5527; 18 Am. Jur.2d, *Corporations* § 416. That is missing in this case and therefore an award of attorneys' fees under these unusual facts and circumstances is warranted. See *Chrysler Corp. v. Dann*, Del.Supr., 223 A.2d 384 (1966). The amount of counsel fees to be awarded, however, must be limited to the reimbursement of reasonable fees actually incurred. Further inquiry is necessary to establish a reasonable fee and as a beginning of this inquiry plaintiffs' attorneys shall be expected to show in detail the hours of work actually spent on this matter.