UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

**Filed 1/10/96**

———————————

AMERICAN SECURITIES TRANSFER       )
INCORPORATED,                      )
                                   )
         Plaintiff-Appellee,       )
                                   )
v.                                 )          No. 95-1021
                                   )     (D.Ct. No. 93-B-1432)
PANTHEON INDUSTRIES, INC.,         )        (D. Colorado)
                                   )
         Defendant-Appellee,       )
                                   )
A.R.G.I., INCORP., and             )
PRINCETON AMERICAN CORPORATION,    )
                                   )
         Defendants-Appellants     )

———————————

ORDER AND JUDGMENT[*]

———————————

Before BRISCOE, COFFIN[**] and BARRETT, Circuit Judges.

———————————

Plaintiff American Securities Transfer, Inc. (AST) brought this interpleader action to resolve conflicting claims to a certificate representing 2 million shares of common stock of Pantheon Industries, Inc. The shares were issued to defendant A.R.G.I. Incorp. (ARGI), which assigned them to a predecessor of defendant Princeton American Corp. ARGI subsequently asked AST,

———————————

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgment; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Frank M. Coffin, United States Senior Circuit Judge for the First Circuit, sitting by designation.

Pantheon's stock transfer agent, to reissue the certificate after removing a restriction against transfer from its face. Pantheon, however, directed AST not to remove the restriction, and claimed that the certificate was invalid because the consideration for it never had been paid. Caught in the middle, AST filed this action pursuant to 28 U.S.C. §§ 1335, 1397 and 2361. The district court concluded that, for different reasons, neither ARGI nor Princeton could obtain relief, and it awarded possession of the stock certificate to Pantheon. ARGI and Princeton appeal, arguing that the court unfairly created a Catch-22 by denying both of them -- the transferor and the transferee of the certificate -- the right to pursue a recovery. Having carefully reviewed the record, we conclude that the perceived dissonance in the judgment is largely attributable to appellants. We consequently affirm the court's decision on damages. We remand, however, for further inquiry on the limited question of who is entitled to possession of the certificate.

## I. Background

AST, as Pantheon's stock transfer agent, issued the disputed certificate to ARGI in March 1990. Although the certificate bore a restrictive legend barring transfer except in certain specified circumstances, ARGI in 1991 assigned it to a company (Minco) that shortly thereafter sold its assets to Princeton. ARGI's consideration for the certificate included a $40,000 promissory note on which no payments ever were made.

In August 1992, Pantheon advised AST that the certificate had been issued in error and directed AST to cancel it. AST responded that it could not cancel the certificate, but would place a stop transfer order against it. The following year, ARGI submitted the certificate to AST and requested that a new one be issued without the restrictive legend. Informed of the request by AST, Pantheon directed that the certificate not be re-issued or transferred because ARGI's promissory note had not been paid. To resolve the competing claims, AST filed this interpleader action, naming ARGI, Princeton and Pantheon as defendants.

Each of the defendants added its own claims. ARGI and Princeton filed a counterclaim seeking damages from AST for a breach of the Colorado counterpart to Article 8 of the Uniform Commercial Code, which imposes a duty on an issuer or transfer agent to register the transfer of securities as requested if certain preconditions are met. See Colo. Rev. Stat. § 4-8-401. ARGI and Princeton also filed crossclaims against Pantheon, matched by cross-claims filed by Pantheon against them.

Following motions for summary judgment filed by all parties, the district court on December 2, 1994, granted judgment for Pantheon and AST on Princeton's UCC claim. 871 F. Supp. 400, 407. It concluded that, based on the undisputed evidence, AST owed no statutory duty to Princeton because only ARGI had requested the certificate's reissuance. It therefore dismissed Princeton's UCC claim, but held that the other parties' claims involved factual disputes that could not be resolved on summary judgment.

-3-

On December 7, Pantheon, ARGI and Princeton stipulated to the dismissal of various claims brought by each of them. The next day, Pantheon filed a motion seeking to amend its crossclaims to request specific performance, rather than rescission, as the remedy on its breach of contract claim. ARGI and Princeton objected to this proposed change, and a hearing was held on the Motion to Amend on December 14.

During the course of that hearing, a discussion took place concerning a proposed claim by Pantheon for attorney's fees against ARGI and Princeton. Princeton's counsel expressed his belief that Princeton had been dismissed from the case as a result of the district court's December 2 summary judgment ruling. When it appeared that the decision had left pending one of Princeton's claims for relief, the company's counsel moved to dismiss that claim as well. Pantheon's counsel initially objected, noting that it had little hope of obtaining attorney's fees from ARGI, which was bankrupt. Later, however, he agreed to consent to Princeton's dismissal "if they are willing to throw out any claim with prejudice, so we are not going to have an appeal on this down the road."

The following colloquy then took place:

COURT: You are willing to dismiss any claims Princeton may have against either ASTI or Pantheon with prejudice?

STRAUSS (Princeton's attorney): That's correct, your Honor. Because we truthfully [] thought that had already been accomplished by the Court's order for summary judgment.

—4—

COURT: Mr. Helfrich [Pantheon's attorney], will you accept that?

HELFRICH: I will, your Honor.

COURT: All right. At this time we will dismiss all claims that Princeton may have against ASTI and Pantheon Industries, Inc. with prejudice.

Transcript, Hearing on Motion to Amend, at 20.

The court also allowed Pantheon to amend its contract claim to seek specific performance. In succession on the next two days, December 15 and 16, Pantheon and AST filed new motions for judgment on the pleadings or for summary judgment against ARGI. They argued that, having assigned the certificate to Princeton -- which no longer was a party in the case -- ARGI had no compensable loss. ARGI filed an opposition.

On December 19, the morning that the trial was scheduled to commence, the district court, after carefully considering all arguments, granted AST and Pantheon's motions. It reasoned that ARGI had requested as a remedy only damages, not possession of the certificate, and that because it had transferred the stock to Princeton it incurred no damages from the refusal by AST and Pantheon to reissue the certificate without the legend barring transfer. Accordingly, the court entered judgment in favor of AST and Pantheon, and awarded possession of the certificate to Pantheon, the only remaining claimant. The court denied ARGI and Princeton's post-judgment motions, and this appeal followed.

## II. Discussion

Throughout this case, appellants have focused primarily on their effort to obtain damages from AST and Pantheon based on AST's refusal to reissue the stock certificate without the restrictive legend. The district court concluded that Princeton could not bring such a claim because it had made no request of AST respecting the certificate, and so there was no obligation running from AST to Princeton. Notwithstanding its counsel's assertions to the contrary, in the clear and explicit language quoted above, Princeton subsequently (at the December 14th hearing) gave up with prejudice all claims against AST and Pantheon.[1] We therefore think it beyond debate that Princeton has no remaining stake in this case, having abandoned the right to appeal the December 2nd ruling that AST had no duty to it.

We thus turn to ARGI. Its primary contention is that AST and Pantheon cannot have it both ways: they cannot rely on Princeton's lack of standing, the principle that underlay the court's December 2 summary judgment decision, while maintaining two weeks later that the assignment to Princeton divested ARGI of _its_ standing. This depiction of the district court's rulings is, however, both overly simplistic and incorrect.

It is true that the district court held that Princeton lacked standing to bring a UCC claim against AST based on a lack of duty. At the hearing on December 14, however, the court did not rule that

---

[1] Indeed, Princeton's lawyer also stated that "Princeton will assert whatever rights it believes it has against ARGI depending on how this case comes out." Hearing at 20.

ARGI lacked standing to assert an interest in the certificate. Rather, the court explicitly noted that the problem was not one of standing but of the form of ARGI's requested relief:

> While A.R.G.I. may have standing to assert a claim, it doesn't mean that under the undisputed facts of this case it has any ability to obtain judgment as a matter of law, because when it assigned its rights, its beneficial interest in this stock certificate to Minco [whose assets were purchased by Princeton], it assigned any right to damages that might be asserted either for a claim of violation of the Uniform Commercial Code, 4-8-401, or for breach of contract.

In other words, the court found that, whatever the merits of a claim for equitable relief, there was no basis for a damages award.

Consistent with the focus on damages, counsel attempted to rectify the problem by offering a ratification by Princeton of ARGI's damages request and also sought to demonstrate an assignment of the stock certificate back to ARGI from Princeton. The court indicated that a ratification by Princeton would be of no avail since Princeton had forsaken all of its claims, [2] while ARGI presented no evidence that a re-assignment had taken place. The court was unwilling to permit a possible future re-assignment to derail the proceedings.

We think the court properly handled the damages issue. Having successfully transferred the certificate (and thus having received

---

[2] Although the joint counsel for ARGI and Princeton argued that he had not intended at the December 14th hearing to give up the right to appeal the court's summary judgment decision against Princeton, the language we have quoted above is unequivocal. The attorney may not have intended the consequences of a full dismissal with prejudice of Princeton's claims, but we cannot fault the district court for holding him to his word.

whatever consideration it had demanded), ARGI is in no position to seek damages based on AST's failure to remove the restrictive legend barring transfer. It is Princeton who now suffers any consequences from the restriction on the certificate. ARGI, moreover, does not attempt on appeal to identify a compensable injury of its own, but simply reiterates that it should have been allowed to retrieve a damages claim from Princeton through either ratification or re-assignment. We disagree, for the reasons expressed by the district court.

We reject ARGI and Princeton's suggestion that this conclusion casts them as the victims of a Catch-22. Had Princeton not removed itself from the case -- completely and voluntarily -- it might have been able to ratify ARGI's damages action or to seek review of the December 2 ruling that it was not a proper plaintiff on the UCC claim. Although Princeton's decision to dismiss all claims may have resulted in part from a mistaken belief that ARGI's right to request damages was uncontested, it was at least partially animated by a desire to negate the basis for Pantheon's request to add a claim for attorney's fees. Indeed, as noted above, Pantheon initially objected to the dismissal. With respect to damages, therefore, the problem for ARGI and Princeton is not that the court's rulings boxed them into a corner. ARGI and Princeton set their own course, and the court simply held them to it. [3]

---

[3] We acknowledge that the district court seemed to accept that ARGI had a viable damages claim when it dismissed Princeton's UCC claim on December 2, and neither Pantheon nor AST argued otherwise. We cannot fault the court, however, for failing to recognize at

We also must consider, however, the court's simultaneous conclusion that disposition of the damages issue requires awarding the stock certificate to Pantheon. The court found that ARGI made no request for possession of the certificate or for other equitable relief. Resolution of the damages issue therefore ended its interest in the litigation, and left pending only Pantheon and its claim of entitlement to the stock. Without considering the merits of that claim, the court ordered release of the certificate to Pantheon and authorized it to cancel the certificate on its books.

Whether to affirm this aspect of the judgment has proven to be a close call. On the one hand, ARGI at no time explicitly asked the district court for return of the certificate or elimination of the restrictive legend as a remedy. During the December 19th hearing, the court three times expressed its view that ARGI had never sought equitable relief, and observed that "the distinction between having sought equitable relief on the one hand and a claim for damages on the other is . . . crucial." It repeated the thought near the end of the hearing:

_____

that early juncture a flaw that no one had pointed out. We think it likely and understandable that no one focused on ARGI's position with respect to damages until after Princeton was out of the case. Indeed, Pantheon and AST arguably gave ARGI the benefit of the doubt in assuming its right to pursue damages on behalf of Princeton so long as Princeton remained a party. Once Princeton gave up its claims, ARGI could seek damages in this action only on its own behalf. Although the earlier treatment of ARGI's claims may have lulled counsel into dismissing Princeton from the case, Pantheon and AST did not instigate that action. In short, we think it entirely appropriate to place on ARGI and Princeton the responsibility for protecting their own interests.

-9-

As I said, counsel, you all are sophisticated commercial counsel. This is not a situation where we have unsophisticated pro se parties. There are choices made along the road when you come to the forks in litigation. One of those choices that could have been made was to seek equitable relief, and you didn't do it.

Hearing, at 29.

Counsel never responded that its pleadings did, in fact, demonstrate a request for injunctive relief, focusing instead on its argument that ARGI was a proper party to seek damages. In its post-judgment filings and brief on appeal, ARGI's position remained opaque. It did not expressly claim that the district court should have viewed its pleadings to include an implicit demand for equitable relief, stressing instead that the court erred in failing to read its answer as claiming an interest in the certificate. The court, however, did not deny that ARGI had asserted an "interest" in the certificate; the problem was that it could not obtain the only relief the court believed it had sought -- damages.

Indeed, ARGI acknowledged that it did not seek equitable relief, asserting in its appellate brief that a party is not required to seek equitable relief in an interpleader action. Though this may be a correct statement of the authorities, see, e.g., Loretto Literary & Benevolent Instit. v. Blue Diamond Coal Co., 444 A.2d 256, 259 (Del. Ch. 1982); Rhodes, M., Transfer of Stock §§ 22:4-22:9 (6th ed. 1985), it facially supports the district court's judgment. Plaintiffs challenging a wrongful refusal to transfer stock may bring either an action at law for damages or an action for equitable relief. Id. Since appellants

-10-

emphatically assert entitlement to damages, it would seem that they concede that they did not ask for other relief.

While this view of the case gives us an appreciation for the district court's determination, we are reluctant, for various reasons, to resolve this aspect of the dispute on the basis of default. First, the nature of the damages requested here is significant. A plaintiff who chooses a legal, rather than equitable, remedy may recover the market value of the shares at the time of the wrongful action "just as in the ordinary case of conversion," Loretto, 444 A.2d at 259. See also Transfer of Stock § 22:9. Even in an equitable action, however, incidental damages may be awarded for a loss caused by the wrongful delay in transferring stock.

In the final paragraph of their UCC claim for relief (Amended Counterclaim, ¶ 15), appellants allege that they have incurred damages "in the nature of the diminution in market value of the said shares since June 18, 1993, loss of potential profits." Even AST acknowledges in its brief as appellee that this formulation logically indicates "that ARGI seeks possession of the Certificate plus damages measured by the value at the time of presentment to AST less the value of the Certificate at the date of trial." Restated somewhat more directly, the damages asserted here appear to be for incidental loss associated with an implicit claim for possession, and not for full value based on conversion of the certificate. Thus, the pleadings, though far from ideal, fairly may be read to claim entitlement to the certificate. Indeed, AST,

which has no interest in the certificate itself, all but admits that any other reading would be erroneous.

Second, counsel's failure to make this point to the district court during the colloquy on December 19th, while not entirely excusable, must be considered in perspective. AST and Pantheon's motions had been filed only a few days earlier, essentially on the eve of trial. As the district court recognized, the motions were untimely, and normal practice would have entitled appellants to substantially more time to respond. Counsel's focus in that time-compressed circumstance naturally was on preserving the damage claims. In addition, while ARGI's response to the final summary judgment motion and its motion to amend or alter judgment are not models of clarity, it is fair to say that both highlight ARGI's status as shareholder of record and at least hint that ARGI's claim of an interest in the certificate embraced a request for its possession.[4] In short, there is good reason for hesitancy in declaring default.

Third, and most crucial, is that the district court awarded the certificate to Pantheon without any review of its substantive argument that the certificate was invalid for lack of consideration. No one, however, contests that ARGI is the

_____

[4] ARGI's imprecision is somewhat understandable in light of Pantheon's motion, which argued that ARGI had made no claim at all to the certificate. AST's motion, by contrast, stated:

> At best, ARGI may assert entitlement to reissuance of the Certificate without any legend subject to the competing claim asserted by Pantheon to the Certificate.

-12-

shareholder of record, and Pantheon is conspicuous by its absence on this appeal.  Taking all of these circumstances into account, we believe the best course of action is to remand the case to the district court for consideration of the merits of the right of possession.[5]

We have considered appellants' remaining arguments, and find them to be without merit.

<u>Affirmed in part, vacated and remanded in part.  Each party is to bear its own costs.</u>[6]

Entered for the Court:


Frank M. Coffin, Senior Circuit Judge

---

[5] Such a remand will not involve any claim for damages, including those that typically may be associated with equitable relief, since we are affirming the court's determination that ARGI's successful assignment of the certificate forecloses monetary relief based on delay in reissuing or transferring it.  We recognize that appellants may have no interest in pursuing possession, however, in light of counsel's statement at oral argument that the stock essentially was worthless at the time of trial.  The court, of course, should consult with the parties before proceeding.

[6]Appellants' motion for leave to file second supplemental appendix is granted.