COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

May 7, 2015

Anne C. Foster, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Andrew D. Cordo, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

Re: *In re Nine Systems Corporation Shareholders Litigation*
Consolidated C.A. No. 3940-VCN
Date Submitted: January 13, 2015

Dear Counsel:

In its post-trial opinion, the Court found that Defendants[1] breached the duty

of loyalty (or aided and abetted such a breach) by conducting a self-interested

---

[1] For the purposes of this fee petition, the Defendants are Wren Holdings, LLC; Javva Partners, LLC; Catalyst Investors, L.P.; Dort A. Cameron, III; Howard Katz; and Christopher Shipman. The reason for shifting fees is the breach of fiduciary duty. Although Andrew Dwyer aided and abetted such a breach, he was not a fiduciary. Troy Snyder, although a fiduciary, did not violate his duty of loyalty (or act in bad faith); thus, the Company's (as defined *infra*) § 102(b)(7) charter provision exculpates him from monetary liability.

recapitalization.[2]    Unfortunately for Plaintiffs, monetary damages were not available because the pricing was fair and Plaintiffs suffered no quantifiable damage.    The Court granted the Plaintiffs—shareholders in their individual capacities—leave to "petition the Court for an award of attorneys' fees and costs," noting "its inherent equitable power to shift attorneys' fees and its statutory authority to shift costs."[3]    After briefing and oral argument on the topic, the Court finds that an award of $2 million for attorneys' fees and expenses (other than court costs) is equitable.[4]

The post-trial opinion recounted the factual background of this dispute in detail, and the Court will not do the same here.  Relevant to the pending motion, Plaintiffs' counsel accrued $11,427,195.23 in fees and costs, representing Plaintiffs through two complaints, motion to dismiss proceedings, summary judgment

---

[2] *In re Nine Sys. Corp. S'holders Litig.*, 2014 WL 4383127 (Del. Ch. Sept. 4, 2014).

[3] *Id.* at *52 (footnote omitted).

[4] The Court's analysis is limited to shifting attorneys' fees; that implicates equitable principles and equitable discretion and not the award of court costs. Costs can be handled separately.

proceedings, an eleven-day trial, and related efforts.[5]  Plaintiffs' lead counsel, Jones Day, performed a majority of the work and paid fees and expenses for Delaware counsel.[6]  Jones Day had a contingency-fee agreement contemplating a return of its "out-of-pocket expenses" and 40% of any excess recovery as attorneys' fees.[7]

Plaintiffs claimed that Streaming Media Corporation, later known as Nine Systems (the "Company"), was worth $30.89 million at the time of a recapitalization in 2002 that materially diminished their equity percentages.[8]  An individual affiliated with a major shareholder had valued the Company at $4 million for that recapitalization.  Plaintiffs sought damages of over

---

[5] Aff. of Lawrence D. Rosenberg in Supp. of Pls.' Pet. for Att'ys' Fees & Costs ("Rosenberg Aff.") ¶¶ 4-5, 7-11, 19-21.

[6] *Id.* ¶¶ 12, 14.

[7] *Id.* ¶ 13 n.1.  Of those fees, 30% were to be paid to other counsel in New York. Defendants raise concerns about this arrangement.  *See, e.g.*, Defs.' Answering Br. in Opp'n to Pls.' Post-Trial Pet. for Att'ys.' Fees & Costs 53 n.131.  Plaintiffs' counsel respond that the arrangement was fully disclosed to their clients.  Pls.' Reply in Supp. of Post-Trial Pet. for Att'ys' Fees and Costs 12 n.2.  Ultimately, Plaintiffs are awarded only part of their requested fees, and the questions before the Court are whether Plaintiffs are entitled to fees, and in what amount–not what Jones Day may do with them.

[8] *In re Nine Sys.*, 2014 WL 4383127, at *20.

$130 million, plus interest, after the Company was acquired for approximately $175 million in 2006.[9]

This Court has "equitable power to award fees in a proper case."[10] However, equitable fee shifting is "unusual relief" because of the American Rule, under which each party generally must pay its own attorneys' fees.[11] The American Rule is subject to a number of well-established exceptions, such as "cases where the underlying (pre-litigation) conduct of the losing party was so egregious as to justify an award of attorneys' fees as an element of damages."[12] There is substantial authority indicating that the bad faith exception is limited to cases of "intentional misconduct,"[13] but the Court's equitable powers can be viewed more broadly as permitting fee shifting "where the situation or the equities

---

[9] *Id.* at *1.

[10] *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 685, 687 (Del. 2013).

[11] *E.g., Reagan v. Randell*, 2002 WL 1402233, at *3 (Del. Ch. June 21, 2002) (internal quotation marks omitted).

[12] *Id.* (internal quotation marks omitted). The common fund and corporate benefit exceptions do not directly apply here, although associated equitable and policy considerations are informative.

[13] *See* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 13.03[d], at 13-14-13-15 & n.54 (2014) (collecting cases).

dictate that such a burden should not fall on the prevailing party."[14]  In awarding fees, whether as a proxy for unquantifiable damages or as a traditional fee award, Delaware courts have considered a need "to discourage outright acts of disloyalty" and to avoid penalizing plaintiffs "for bringing a successful claim against the [defendants] for breach of their fiduciary duty of loyalty."[15]

After trial, the Court determined that Defendants breached their duty of loyalty to Plaintiffs.  Among the Court's findings were that they (1) "utter[ly] fail[ed] to understand th[eir] fiduciary relationship" with Plaintiffs,[16] (2) "knowingly excluded" from the decision-making process a director who represented a group of minority shareholders,[17] (3) effected the recapitalization through a "grossly inadequate process,"[18] and (4) "sought to avoid full and fair communications with the Company's stockholders."[19]  Plaintiffs could not recover monetary damages, however, because "the equity value of the Company in January

---

[14] *Loretto Literary & Benevolent Inst. v. Blue Diamond Coal Co.*, 444 A.2d 256, 260 (Del. Ch. 1982).

[15] *See, e.g.*, *William Penn P'ship v. Saliba*, 13 A.3d 749, 759 (Del. 2011).

[16] *In re Nine Sys.*, 2014 WL 4383127, at *36.

[17] *E.g.*, *id.* at *35.

[18] *Id.* at *47.

[19] *Id.* at *18.

2002 before the Recapitalization was $0."[20] The failure of the fiduciaries to follow a credible valuation process perhaps can be explained through consideration of the Company's limited financial means at the time. No similar benefit of the doubt cloaks the failure to disclose the recapitalization and its consequences to the shareholders or the lack of information about the Company's activities and relocation over several years. A finding of "bad faith" depends on context, and the Court is satisfied that Defendants' pre-litigation conduct qualifies.[21]

Moreover, the broader, unusual circumstances of this case support an equitable shifting of fees. Namely, Plaintiffs held reasonable concerns about the recapitalization, Defendants' concealment of information hindered pre-merger legal action, and Plaintiffs succeeded in showing that Defendants breached their duty of loyalty. The Plaintiffs did not incur any out-of-pocket obligation to pay attorneys' fees because of the contingent nature of their fee agreement with counsel, but that does not necessarily equate Jones Day's efforts to the functional equivalent of a charitable undertaking. In other words, Defendants who rightfully

---

[20] *Id.* at *45.
[21] To be clear, the Court does not find bad faith in the conduct of the litigation.

ought to owe Plaintiffs' attorneys' fees should not be able to avoid their obligations because of the way in which the Plaintiffs structured their relationship with their counsel.[22]

This is a troubling case that tests the range of equity's powers. Defendants' conduct warrants a shifting of fees, but the shifting of fees cannot be in an amount grossly disproportionate to the benefit the litigation can achieve. Litigation of this nature is expensive. Jones Day's efforts were not unreasonable if Defendants' potential liability was in excess of $30 million. The Court, obviously with the

---

[22] Defendants argue that fees cannot be shifted because Plaintiffs bore no litigation expenses. A number of cases have limited awards to amounts "actually incurred" by plaintiffs. *See, e.g.*, *Scion*, 68 A.3d at 683-85 (discussing contractual fee shifting but remanding for a decision on equitable fee shifting); *Loretto*, 444 A.2d at 261 (finding fee shifting appropriate and concluding that "[t]he amount of counsel fees to be awarded, however, must be limited to the reimbursement of reasonable fees actually incurred"). Nonetheless, Defendants have not convinced the Court that it loses its equitable discretion whenever a plaintiff negotiates a contingency-fee agreement. That the Supreme Court remanded *Scion* for consideration of whether equitable fee shifting was appropriate (after rejecting a contractual fee award for lack of "incurred" expenses) further weakens Defendants' arguments. *See Scion*, 68 A.3d at 686-88. The trial court in that case thereafter declined to shift fees for pre-litigation conduct, but the facts can be distinguished for a number of reasons—including a lack of harm beyond that remedied by contract reformation. *See ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 2013 WL 5152295, at *8-9 (Del. Ch. Sept. 16, 2013).

benefit of trial, concluded that such an amount was not supported, but it could have been reasonable to anticipate before trial a recovery of $3-4 million (before interest).[23] The fees sought by Jones Day are disproportionate and plainly excessive in relation to the Court's perception of a plausible pre-trial damages assessment.[24]

---

[23] That range is uncertain but can find some support in the record. For example, former director and CEO Art Williams, who at times may have been unduly optimistic, wrote an email valuing the Company's assets at $10 million, and the Company used projections in November 2001 that put its value at $18.1 million. *In re Nine Sys.,* 2014 WL 4383127, at *38. Plaintiffs' aggregate interest was diluted from approximately 26% to approximately 2% in the recapitalization. *Id.* at *17.

[24] *Cf. City of Riverside v. Rivera*, 473 U.S. 1315 (1985) (granting a stay of a lower court's mandate to pay a sum of attorneys' fees—awarded under a federal fee shifting statute—substantially larger than jury-awarded damages). In granting the stay of the fee award which was later sustained, Justice Rehnquist, as Circuit Justice, explained:

> The billing experience I gained in 16 years of private practice strongly suggests to me that a very reasonable client might seriously question an attorney's bill of $245,000 for services which had resulted solely in a monetary award of less than $34,000. In this sense nearly all fees are to a certain extent "contingent," because the time billed for a lawsuit must bear a reasonable relationship not only to the difficulty of the issues involved but to the amount to be gained or lost by the client in the event of success or failure.

*Id.* at 1321. In some circumstances there is not necessarily a proportionality requirement for fee awards. Here, in the exercise of equitable discretion,

If Plaintiffs' lodestar is unreasonable, what does the Court do?[25]  Some fee is warranted, and that any fee would be speculative and uncertain does not necessarily lead to the conclusion that no fee can be set.  Just because determining an award of fees is difficult is not an excuse for not awarding any fees.  One approach, and there is much room for doubt and second-guessing, is to project a reasonable pre-litigation recovery range, but to discount it based upon the ultimate failure to recover any damages.  If *Saliba* is correct about the right of a party to recover attorneys' fees even though that party recovers nothing, then there should be some substitute process to allow for a fee award even though the actual billings are disproportionate.

---

proportionality and reasonableness are key guidelines for determining the appropriate award.

[25] In contrast, the lodestar in *Saliba* was reasonable in the circumstances.  *See Saliba v. William Penn P'ship*, C.A. No. 111, at 1 (Del. Ch. Mar. 23, 2011) (ORDER) ("Plaintiffs are awarded their reasonable attorney's fees and costs in the amount of $346,035.24 (including allowable interest)."); *see also Saliba v. William Penn P'ship*, 2010 WL 1641139 (Del. Ch. Apr. 12, 2010).  The dispute involved real estate which was valued at over $5 million by court-appointed experts. *William Penn P'ship*, 13 A.3d at 758.

A projection of a litigation recovery range would enable the Court to undertake a quasi-*Sugarland*[26] analysis in light of the considerations set forth above. The *Sugarland* analysis considers "1) the results achieved; 2) the time and effort of counsel; 3) the relative complexities of the litigation; 4) any contingency factor; and 5) the standing and ability of counsel involved," with the results achieved carrying the most importance.[27] Strictly speaking, the quantifiable benefit obtained in this litigation was $0.[28] Nonetheless, Plaintiffs were harmed by faithless fiduciaries, and the litigation vindicated certain important rights related to a company that was arguably worth more than $4 million at the relevant time. Over 19,000 hours were dedicated to this litigation; the Court has no reason to question the integrity of that effort.[29] Counsel tackled complex legal issues, "including standing doctrines . . . ; the doctrinal limitations of *Gentile*; the existence of self-dealing, conflicts of interest and a control group; and the

---

[26] *Sugarland Indus., Inc. v. Thomas,* 420 A.2d 142 (Del. 1980).

[27] *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1254 (Del. 2012).

[28] Of course, although direct application of *Sugarland* requires consideration of the benefit for which Plaintiff can claim credit, an adapted approach offers one method for arriving at a reasonable (in context) award.

[29] *See* Rosenberg Aff. ¶ 17 (stating Jones Day's total).

valuation of a start-up company."[30] Jones Day worked on a completely contingent fee arrangement, paying Delaware counsel. Finally, Jones Day and Plaintiffs' Delaware counsel are able representatives and respected practitioners in this Court.

In conclusion, based on a more realistic benchmark of a $7-10 million benefit,[31] Plaintiffs are entitled to an award of $2 million in attorneys' fees and expenses (other than court costs). Such an award promotes meritorious litigation to address harm from disloyal acts and comports with equitable principles. Indeed, it is a number consistent with a more general application of equitable fee shifting considerations.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:    Register in Chancery-K

---

[30] *Id.* ¶ 6.

[31] This range is an amalgam of plausible pre-trial expectations, discounting for litigation uncertainty and the particular risk of this proceeding, and interest.