**William B. WEINBERGER and Edward U. Notz, Plaintiffs,**

**v.**

**UOP, INC., the Signal Companies, Inc., and Sigco Incorporated, Defendants.**

**Civ. A. No. 5642.**

Court of Chancery of Delaware,
New Castle County.

Submitted: March 13, 1986.
Decided: July 11, 1986.

William Prickett and Michael Hanrahan of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for plaintiffs.

Robert K. Payson and Kent A. Jordan of Potter, Anderson & Corroon, Wilmington, and Alan N. Halkett of Latham & Watkins, Los Angeles, Cal., for The Signal Companies, Inc.

## OPINION

BERGER, Vice Chancellor.

This is the decision on plaintiffs' various motions relating to the Judgment Order dated February 20, 1985 (the "Order"). Pursuant to paragraph 1 of the Order judgment was entered against defendant, The Signal Companies, Inc. ("Signal") in the amount of $1.00 per share of U.O.P., Inc. ("UOP") common stock formerly owned by the class members together with interest "to the date of payment." Paragraph 2 of the Order reserved jurisdiction with respect to plaintiffs' claims for counsel fees and litigation expenses. Plaintiffs now seek a determination that (1) any attorneys' fees awarded be paid by Signal in addition to the amount due the class under the Order; (2) the interest to be paid by Signal pursuant to the Order and post-judgment interest should be compound rather than simple interest; (3) costs, including all litigation expenses incurred by plaintiffs, should be awarded to them; and (4) Signal should not be permitted to satisfy paragraph 1 of the

Order until the full extent of its liability has been determined.

There is no need for a detailed discussion of the facts or holdings in this litigation. Almost five years after the complaint was filed, the Delaware Supreme Court reversed this Court in a landmark decision holding that Signal breached its fiduciary duty of entire fairness in effectuating a merger whereby the former minority stockholders of UOP were cashed out at $21 per share. *Weinberger v. U.O.P., Inc.*, Del. Supr., 457 A.2d 701 (1983). On remand, this Court found that rescissory damages would be an inappropriate remedy because of the speculative nature of the offered proof and that compensatory damages could not be determined with any degree of precision. Based upon the premise that the wrong to the UOP minority was Signal's failure to disclose information necessary to an informed vote, this Court concluded that an award of $1.00 per share plus interest represented a fair measure of compensation. *Weinberger v. U.O.P., Inc.*, Del.Ch., Civil Action No. 5642, Brown, C., (January 30, 1985). The Delaware Supreme Court affirmed, finding no abuse of discretion in the award of damages, the decision not to award rescissory damages or the award of interest from February 1, 1983. *Weinberger v. U.O.P., Inc.*, Del.Supr. 497 A.2d 792 (1985) (Order).

As a general proposition, it is settled law that litigants must bear their own attorneys' fees. *Maurer v. International Re-Insurance Corp.*, Del.Supr., 95 A.2d 827, 830 (1953); *In Re Equitable Trust Co.*, Del.Ch., 30 A.2d 271, 272 (1943). Delaware courts have been very cautious in granting exceptions to this rule, although one that has been recognized is the "common fund" exception. Under this exception, where a party, acting on behalf of a class, is successful in creating a common fund for the benefit of all class members, attorneys' fees will be paid from the common fund or property. *C M & M Group, Inc. v. Carroll*, Del.Supr., 453 A.2d 788, 795 (1982). Signal argues that this is a

common fund case where attorneys' fees should be awarded from the recovery obtained by the class.

While plaintiffs concede that this case comes within the common fund exception, they argue that the Court has the discretion to assess attorneys' fees against Signal and should exercise that discretion, as a matter of equity, based upon the findings and conclusions of the Delaware Supreme Court as well as the manner in which the "relatively small" class award was determined. Plaintiffs emphasize that Signal is an adjudicated fiduciary wrongdoer, not just the losing party in a commercial dispute. In addition, through no fault of plaintiffs, this Court was unable to award rescissory damages and faced similar evidentiary problems in determining compensatory damages. Plaintiffs seem to suggest that, but for the problems of proof created by the passage of time, they would have been entitled to a considerably higher damage award. They apparently view the Court's award—described as "an effort to provide some ... compensation for the wrong ..."—as a "failure of the judicial system." To reduce that award by attorneys' fees would compound that failure.

Plaintiffs rely primarily upon the decisions in *Loretto Literary & Benevolent Institution v. Blue Diamond Coal Company*, Del.Ch., 444 A.2d 256 (1982) and *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) for the proposition that attorneys' fees may be assessed against the corporate wrongdoer. In *Loretto*, plaintiffs filed suit to compel the defendant corporation to record a transfer of their shares on the corporate books. After discovery and a five month delay, the company recorded the transfers thereby mooting plaintiffs' claim. Finding that the corporation had no reasonable justification to refuse to transfer the shares, the Court assessed attorneys' fees against the corporation under what it described as "unusual facts and circumstances...." *Loretto Literary & Benevolent Institu-*

*tion v. Blue Diamond Coal Co.*, 444 A.2d at 261.

*Mills* involved a claim under § 14(a) of the Securities Exchange Act of 1934. The trial court found, as a matter of law, that the proxy statement issued in connection with the subject merger omitted material information. The interlocutory judgment on liability was upheld by the Supreme Court and interim attorneys' fees were assessed against the defendant corporation. The Court stated:

> [R]egardless of the relief granted, private stockholders' actions of this sort "involve corporate therapeutics," and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute. To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit. (Footnotes omitted) *Mills v. Electro Auto-Lite Company*, 396 U.S. at 396–397 [90 S.Ct. at 627–628].

Plaintiffs also cite several cases in which attorneys' fees were borne by the defendant corporation either pursuant to the terms of a settlement agreement or where plaintiffs had achieved a non-pecuniary benefit for the stockholders. *See, e.g., Goldstone v. Texas International Co.*, Del. Ch., Civil Action Nos. 6651, 6652, 6665 (Consolidated) and 7607, Berger, V.C. (July 10, 1985) (Settlement); *Lewis v. Fuqua*, Del.Ch., Civil Action No. 6534, Hartnett, V.C. (February 16, 1982) (Settlement); *Roizen v. Multivest, Inc.*, Del. Ch., Civil Action No. 6535, Brown, C. (December 27, 1982) (Non-pecuniary benefit). However, these cases, as well as the decision in *Mills*, are readily distinguishable. Those involving settlement provide no support for plaintiffs' position inasmuch as the defendant corporations had agreed to pay attorneys' fees in an amount awarded by the Court. The decisions in *Mills* and *Roizen* were

premised on the theory that all of the stockholders had benefited from plaintiffs' action and should have to share in the costs of achieving that benefit. None of these cases was predicated upon the concept that the corporate defendant should be required to pay attorneys' fees because of its fault or wrongdoing—the premise on which plaintiffs rely.

The *Loretto* decision, although not involving a class action, does rest on a principle which plaintiffs urge is applicable in this case—that in unusual circumstances attorneys' fees will be assessed against a corporation in connection with its treatment of one or more stockholders. The unusual circumstance in *Loretto* was that there was no legitimate ground, based upon any credible evidence, for the corporation's refusal to transfer plaintiffs' shares on the company's books. Although the court in *Loretto* did not go so far as to find bad faith on the company's part, the total lack of justification for defendant's conduct apparently raised the specter of bad faith and formed the basis for the decision.

■ After reviewing the many decisions in this action, I am not satisfied that Signal's conduct warrants the imposition of attorneys' fees under the reasoning applied in *Loretto* or the cases cited therein. Signal did not satisfy its fiduciary obligation to treat the minority stockholders of UOP with entire fairness. However, none of the decisions of this Court or the Delaware Supreme Court includes any express or implicit findings that Signal acted in bad faith. In its decision after remand, this Court noted that, "[Signal's] improper conduct may not have constituted a deliberate fraud on the minority as such. At least [the Court] could make no such finding on the evidence that [it] ... heard." *Weinberger v. U.O.P., Inc.*, Del.Ch., Civil Action No. 5642, Brown, C. (January 30, 1985), slip op. at 3.

■ While it may be unusual, as plaintiffs suggest, for a breach of fiduciary duty claim to go to trial and ultimately result in a monetary judgment against the corporate defendant, those factors do not make this an unusual case for purposes of a fee award. To depart from the traditional rules with respect to attorneys' fees, there must be a showing of bad faith, conduct which was totally unjustified, or the like. *See Wilmington Trust Company v. Coulter*, Del.Ch., 208 A.2d 677 (1965). Signal's breach of fiduciary duty was not a minor or technical error. However, the fact that Signal failed in its obligation to deal fairly with the minority stockholders does not, without more, warrant the the unusual relief requested.

I am similarly unpersuaded by the argument that Signal should pay plaintiffs' attorneys' fees because the damage award was too low. The Chancellor, in his discretion, concluded that $1 per share plus interest would fairly compensate the class members given all the circumstances. He undoubtedly was aware of the general rule as to the award of attorneys' fees and there is nothing in his decision which would indicate that the damage award was or should have been adjusted to account for attorneys' fees. Plaintiffs' contention amounts to an indirect reargument of the damage award and, as such, must be rejected. Accordingly, plaintiffs' motion as to attorneys' fees is denied and the award of attorneys' fees will be deducted from the class recovery.

In a similar vein, plaintiffs argue that all of their costs and litigation expenses should be paid by Signal. There is no question that this Court has discretion to award costs, "as is agreeable to equity," 10 *Del.C.* § 5106, or that court costs should be allowed to the prevailing party, Chancery Court Rule 54(d). Signal agrees that ordinary court costs should be awarded to plaintiffs here. However, Signal opposes plaintiffs' motion to the extent that it seeks an award for the expenses of plaintiffs' expert witness and other expenses such as the costs of deposition and trial transcripts, travel expenses and the costs of administering the distribution of the judgment award.

On the question of plaintiffs' expert witness fees, I am satisfied that, pursuant to 10 *Del.C.* § 8906, those fees should be taxed as costs to be paid by Signal. I am not unmindful of the fact that the discounted cash flow analysis advanced by plaintiffs' expert was not adopted by this Court either at the original trial or on remand. However, reliance upon the expert is not a prerequisite to the award of fees. *Consolidated Fisheries Co. v. Consolidated Solubles Co.*, Del. Supr., 112 A.2d 30 (1955). Moreover, the valuation approach used by plaintiffs' expert and this Court's decision, based on prior case law, to reject that approach led the Delaware Supreme Court to liberalize the "outmoded" stock valuation procedure by requiring this Court to consider "proof of value by any techniques or methods which are generally considered acceptable in the financial community and otherwise admissible in Court...." *Weinberger v. U.O.P., Inc.*, 457 A.2d at 712–713. Thus, it cannot be said that the testimony of plaintiffs' expert was not helpful to the Court.

As to plaintiffs' remaining expenses, I find no "compelling special equity" which would warrant assessing them as costs against Signal. *Hutchinson v. Fish Engineering Corporation*, Del.Ch., 204 A.2d 752, 753 (1964), *aff'd.*, Del.Supr., 213 A.2d 447 (1965). Plaintiffs advance essentially the same argument in support of their position on costs as they did in connection with attorneys' fees—that Signal should bear these expenses because it is an adjudicated fiduciary wrongdoer. For the reasons that I found this argument insufficient to justify a departure from the general rule as to attorneys' fees, I reach the same conclusion as to plaintiffs' litigation expenses.

The two remaining matters specifically concern the damage award. First, plaintiffs argue that the interest should be compounded. They contend that compound interest would more fully compensate the class for the wrong and is the type of interest ordinarily paid on investments. Alternatively, plaintiffs urge that interest should be paid on the interest portion of the award as well as the $1.00 per share award. However, plaintiffs do not explain how their proposal of paying interest on interest is different from an award of compound interest and I do not see the distinction if there is one. *See, Devex Corp. v. General Motors Corp.*, 569 F.Supp. 1354, 1368 (D.Del.1983) ("what the plaintiffs actually seek is interest on interest, i.e., compound interest, which is not permitted under Delaware Law.")

Although compound interest may be the type of interest generally obtained by investors, it is not generally favored in the law. *See, Charlip v. Lear*, Del.Ch., Civil Action No. 5178, Walsh, V.C. (July 2, 1985). In addition, interest was set at the statutory rate of 5% above the Federal Reserve discount rate, 6 *Del.C.* § 2301(a), and the statute has been construed as providing only simple interest. *Papendick v. Robert Bosch GmbH*, Del.Super., Civil Action No. 562–1977, Christie, J. (August 4, 1981) (slip op. at 5), *aff'd.*, Del.Supr., 450 A.2d 894 (1982). Notwithstanding plaintiffs' argument that this Court of equity is not bound by the legal limitations of the interest statute, the fact remains that the Chancellor imposed interest at the statutory rate. As with the allocation of attorneys' fees, I presume that the Chancellor was aware at the time he fashioned this relief that interest under the statute is simple, not compound, interest. Finally, as part of their argument with respect to the satisfaction of the judgment (discussed hereafter), plaintiffs tacitly concede that the interest due pursuant to the Order is greater than the interest class counsel could obtain by investing the funds under fiduciary standards. Inasmuch as fiduciaries are free to make investments in instruments or accounts bearing compound interest, *see*, 12 *Del.C.* § 3302, it is apparent that the interest award in this case, even without being compounded, works no inequity on the class members. Based upon the foregoing, plaintiffs' alternative motions with respect to interest are denied.

The last matter for decision is whether Signal's tender of $7,730,412 on November 8, 1985 constitutes full satisfaction of paragraph 1 of the Order. As noted at the outset, paragraph 1 of the Order required Signal to pay $1.00 per share, with interest "to the date of payment." Plaintiffs argue that Signal should not be allowed to satisfy paragraph 1 of the Order before the issues reserved for decision in paragraph 2 of the Order—the award of counsel fees and litigation expenses—and the issue of compound interest raised in plaintiffs' pending motions are finally determined. They say that, until that time, a distribution to the class is not possible. As a result, if Signal is allowed to satisfy paragraph 1 of the Order, the class members will be prejudiced because they will not be receiving the benefit of the statutory interest rate until the date on which they receive the funds.

Signal argues that, having complied with its obligation under paragraph 1 of the Order, it is entitled to have satisfaction of that portion of the judgment entered on the record of the Court. *See,* 47 Am.Jur.2d, *Judgments* §§ 979, 990. As to plaintiffs' argument that the class members are presently unable to receive the funds, Signal responds that they would have already had their money if it were not for plaintiffs' efforts to "squeeze" more from Signal.

The plain language of the Order supports Signal's position. Its obligation to pay interest runs from February 1, 1983 to the "date of payment." The Order does not provide, as it could have, that the interest accrues until such time as the remaining issues are finally determined or until such time as distribution to the class is able to be made. Moreover, plaintiffs have provided no reason why they could not have made an immediate partial distribution of the tendered funds. They could have withheld from the distribution that amount which they would seek in attorneys' fees and costs without prejudice to their contention that those amounts should be borne by Signal.

 I do not accept Signal's implied criticism of plaintiffs' vigorous efforts to enhance the class recovery. However, pursuant to the Order and the applicable legal principles, I find no reason to impose upon Signal the obligation to continue to pay interest while plaintiffs press their positions on these collateral matters. Accordingly, based upon my understanding that there is no dispute as to the accuracy of the mathematical computation of the tendered amount, I conclude that Signal is entitled to the entry of record of its satisfaction of paragraph 1 of the Order as of November 8, 1985.

IT IS SO ORDERED.