**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: June 23, 2023
Date Decided: June 29, 2023

Neal C. Belgam, Esquire
Jason Z. Miller, Esquire
SMITH, KATZENSTEIN &
JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

Thomas G. Macauley, Esquire
MACAULEY LLC
300 Delaware Avenue, Suite 1018
Wilmington, DE 19801

Re: *Knott Partners, L.P. v Josselyn Boudett, et al.*,
C.A. No. 2022-0376-SG

Dear Counsel:

This letter resolves Plaintiff's contested application for a mootness fee. I heard oral argument on the matter on June 21, 2023, and made a partial bench ruling.[1] I need not revisit the issues addressed there in detail. It is sufficient to say that I determined that Plaintiff's lawsuit was meritorious when filed and that the lawsuit caused Defendants to ratify certain corporate acts under 8 *Del. C.* § 204 ("Section 204"), resulting in a substantial corporate benefit. Accordingly, the only question remaining before me is the size of the appropriate fee due to Plaintiff.

On March 10, 2020, the two director board of Telepathy Labs, Inc. (the "Company") executed a written consent allowing for one director's immediate

---

[1] Oral Arg. on Pl.'s Appl. For Att'ys' Fees Dated 6.21.23, Dkt. No. 40.

retirement, leaving the board unable to form a voting quorum in compliance with the corporation's foundational documents.[2] In June 2021, Plaintiff brought a books and records action under 8 *Del. C.* § 220.[3] At the trial in that matter in November 2021, Plaintiff noted the issue of defective corporate actions due to an insufficient quorum.[4] In April 2022, Defendant purported to remedy these issues through stockholder consents associated with a financing, which attempted to backdate a rightsizing of the board.[5] Plaintiff filed this suit later that month.[6] The Company subsequently ratified the defective corporate actions under Section 204.[7]

Under the corporate benefit doctrine, equity requires that a litigant who has thereby worked a benefit on the entity should not have to bear the costs alone.[8] Instead, the costs, including fees, are appropriately borne by the company. Here, the Company's board had acted without a quorum over several years, rendering its actions challengeable as *ultra vires*; Plaintiff's litigation caused the Company to ratify these defective acts under Section 204, thus bringing the corporation in line with the Delaware General Corporation Law and defusing the uncertainty caused by

---

[2] Pl.s' Appl. For an Award of Att'ys' Fees (the "Application") 2-3, Dkt. No. 25.

[3] *Id.* at 3.

[4] Exs. 1-4 to Transmittal Aff. of Jason Z. Miller 60 (pages numbered sequentially based on PDF), Dkt. No. 25.

[5] Defs.' Opp. to Pl.'s Appl. For an Award of Att'ys' Fees ("Opposition") 6-7, Dkt. No. 32

[6] *See* Verified Compl., Dkt. No. 1.

[7] *See* Ex. 5 (Part 1) to Transmittal Aff. of Jason Z. Miller, Dkt. No. 25.

[8] *See United Vanguard Fund, Inc. v. TakeCare, Inc.*, 727 A.2d 844, 850 (Del. Ch. 1998) (citing *Weinberger v. UOP, Inc.*, 517 A.2d 653, 656 (Del. Ch. 1986)).

reliance on the board's actions.[9]   Plaintiff requests a total award of $300,000 in attorneys' fees and expenses.[10]

Defendants' primary argument is that the backdating of approval for the reduced board rendered the subsequent ratification under Section 204 redundant.[11] Per Defendants, the Section 204 ratification therefore resulted in no corporate benefit and merits no fee award.[12]  I disagree.  The corporate benefit here is the difference between the reduction in the risk of subsequent corporate trauma, if any,[13] worked by the backdating, on the one hand, and the impact of definitive ratification under Section 204 on the other.  This benefit, to my mind, is substantial.

I assess whether the requested fee is fair and reasonable under the factors set out by our Supreme Court in *Sugarland*.[14]  I begin my analysis with the primary factor: the benefit achieved.[15]  Here, the benefit conferred upon the corporation, while therapeutic in nature, is substantial. This litigation caused the Company to

---

[9] *See generally* Application (describing the defects in the corporation's actions and the subsequent remedial steps).

[10] *See id.*

[11] Opposition at 13-22.

[12] *Id.* at 19-20.

[13] While I need not make any finding on the matter, there are at least two reasons to be skeptical of the backdating's efficacy.  First, allowing a board to fully cure a yearslong series of defective corporate actions by the mere backdated resolution of the defect itself would (if successful) seemingly obviate, or at least undermine, 8 *Del. C.* § 205.  Second, there is no evidence in the record that the disclosures accompanying the backdating sufficiently informed the voting stockholders of the defective corporate acts, potential director conflicts, etc. that they were purportedly ratifying.

[14] *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 149 (Del. 1980).

[15] *See Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1255 (Del. 2012).

3

validate a series of defective actions, preempting an array of potential future challenges. This Court has held that consistency in awards is important to the administration of justice, thus, actions producing similar benefits warrant similar fee awards.[16] Accordingly, Plaintiff points to two cases involving similar challenges to and subsequent remediation of improperly authorized stock issuances, resulting in fee awards of $850,000 and $1.1 million, respectively.[17]

Turning to the secondary *Sugarland* factors, however, I find that they generally counsel against a fee in the range above. First, I find that the core issue—whether the actions of the board complied with the foundational documents—was not novel or complex. I note that the fee was contingent. That requires an award sufficient to set an adequate incentive for wholesome litigation. In computing such a fee, however, it is appropriate to consider the time and effort expended by Plaintiff's counsel, looking to the "lodestar" fee implied as a crosscheck on the amount of the award.[18] The case settled at an early stage, and a fee in the range above would be twenty to twenty-five times the lodestar amount.[19] The Plaintiff, of course, has not sought that amount—it seeks an award of $300,000, a more wholesome multiple of the lodestar.[20] The Defendants, for their part, concentrated

---

[16] *See Garfield v. Boxed, Inc.*, 2022 WL 17959766, at *13 (Del. Ch. Dec. 27, 2022).
[17] *See De Felice v. Kidron*, C.A. No. 2021-0255-MTZ, at 16 (Del. Ch. Apr. 27, 2022) (TRANSCRIPT); *Olson v. ev3, Inc.*, 2011 WL 704409, at *15 (Del. Ch. Feb. 21, 2011).
[18] *See Garfield*, 2022 WL 17959766, at *15.
[19] *See* Application at 13 (setting forth a lodestar of $36,370.00).
[20] *Id.* at 12-13.

on their all-or-nothing position that no benefit was worked.[21]  They have not persuasively offered a different methodology for setting an award given my finding of substantial corporate benefit.

In light of both the substantial benefit achieved and the contingent nature of the litigation, together with the relatively small amount of time expended, I find that the Plaintiffs' proposed award—$300,000—is appropriate.  None of the remaining *Sugarland* factors cut against this analysis.

An order is attached.

Sincerely,

*/s/ Sam Glasscock III*
Vice Chancellor

---

[21] *See* Opposition at 13-22.

**IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE**

KNOTT PARTNERS L.P., )
)
Plaintiff, )
)
v. )
) C.A. No. 2022-0376-SG
JOSSELYN BOUDETT and )
TELEPATHY LABS, INC., a Delaware )
Corporation, )
)
Defendants. )

**ORDER GRANTING PLAINTIFF'S**
**APPLICATION FOR AN AWARD OF ATTORNEYS' FEES**

AND NOW, this 29th day of June, 2023, for the reasons provided in my accompanying letter opinion,

IT IS HEREBY ORDERED THAT Plaintiff's Application is GRANTED and Plaintiff's counsel is hereby awarded $300,000 in attorneys' fees and expenses.

/s/ Sam Glasscock III
Vice Chancellor