# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE STRAIGHT PATH | ) | |
| COMMUNICATIONS INC. | ) | C.A. No. 2017-0486-SG |
| CONSOLIDATED STOCKHOLDER | ) | |
| LITIGATION | ) | |

# <u>MEMORANDUM OPINION</u>

Date Submitted: July 22, 2024
Date Decided: October 29, 2024

Ned Weinberger and Mark Richardson, LABATON SUCHAROW LLP, Wilmington, Delaware; OF COUNSEL: Jeroen van Kwawegen, Edward G. Timlin, and Eric J. Riedel, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, New York, New York, *Attorneys for Lead Plaintiff Ardell Howard*.

Rudolf Koch, Kevin M. Gallagher, Daniel E. Kaprow, and John M. O'Toole, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Thomas Uebler, MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, Delaware; OF COUNSEL: Jason Cyrulnik, Paul Fattaruso, and Matthew Henken, CYRULNIK FATTARUSO LLP, New York, New York, *Attorneys for Defendants IDT Corporation, Howard Jonas, and The Patrick Henry Trust*.

**GLASSCOCK, Vice Chancellor**

This is—presumably—the last installment[1] in a remarkable litigation. The basic claim alleged was that an asset belonging to the company (Straight Path Communications Inc.) was acquired by the corporate controller at an unfair price. The company was acquired via merger soon thereafter. Obviously, in the usual course, the fiduciary claim would have been deemed acquired as well. Here, however, the asset was an indemnification right for a Federal Communication Commission ("FCC") fine, the amount of which was based on the purchase price in the merger. As the merger value increased due to a bidding war for the company, the indemnification right grew in proportion. A special committee of independent directors, recognizing that the asset had no value to, and would not be monetized by, any of these bidders, sought to preserve the indemnification asset by excluding it from the sale. They considered placing the asset in a trust in favor of the stockholders, which would survive the merger. The corporate controller, however, coerced the release of the indemnification claim in favor of another controlled entity (the indemnitor), instead. His coercion involved, among other things, threatening to prevent the windfall of the unfolding acquisition itself.

In these circumstances, I determined that a claim remained, post merger, belonging to the former stockholders of the company. The matter went forward, through much litigation effort, to a trial on the merits. After trial, I determined that

---

[1] Last, that is, pending appeal.

the corporate controller, Howard Jonas, had breached fiduciary duties to the minority stockholders, that the process by which he acquired the indemnification asset was subject to entire fairness review, and that the process had not been entirely fair. However, I found that the indemnification asset was of minimal value, and that the price paid was fair. Under the circumstances, I awarded only nominal damages.

The matter is before me on Plaintiff's request that the fees incurred in litigation be shifted to Jonas, notwithstanding the lack of damages. Unless an exception to the default American Rule applies, the litigants must bear their own fees. Plaintiff avers that exceptions do apply here. She argues that the litigation has worked a benefit on the stockholder class. This is, unsurprisingly, vehemently denied by Defendants; unsurprisingly, because, as Yeats points out, one cannot expect a dog to praise its fleas.[2] Nonetheless, I reach the same conclusion. Likewise, Plaintiff's appeal to equity is unpersuasive. The argument is that Plaintiff's counsel, with great vigor and skill, took this litigation to a successful if non-remunerative conclusion, and that under those circumstances it would offend equity not to shift fees. I agree with the premise, but not the conclusion—the contingent litigation model upon which counsel agreed to proceed dictates this precise result.

---

[2] William Butler Yeats, *To a Poet, Who Would Have Me Praise Certain Bad Poets, Imitators of His and Mine, in* THE GREEN HELMET AND OTHER POEMS 25 (1912).

More serious, to my mind, is the assertion that Jonas' pre-litigation conduct was so egregious that an exception to the American Rule is in the interest of justice. It is true that Jonas breached his fiduciary duties, blatantly, in his treatment of the special committee. However, on review, I do not find Jonas' actions, and his motivations, justify fee shifting here.

Accordingly, I find the American Rule applicable—each party must bear its own fees. My reasoning follows.

## I.    BACKGROUND

*A.    Factual Background*

I limit my discussion of the facts to only those necessary to understand my analysis.[3]

Defendant Howard Jonas is IDT Corporation's ("IDT") founder and chairman.[4] Straight Path Communications Inc. ("Straight Path") was a public company spun off from IDT on July 31, 2013.[5] As part of the spin off, IDT and Straight Path entered into a separation and distribution agreement (the "S&DA"), which included certain indemnification rights.[6] Jonas holds a controlling interest in

---

[3] For interested readers who wish to read the entire factual background, please refer to my October 3, 2023 memorandum opinion. *See In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2023 WL 6399095 (Del. Ch. Oct. 3, 2023).
[4] *Id.* at *3.
[5] *Id.*
[6] *Id.* at *5.

3

IDT and was, at the relevant time, the controlling stockholder of Straight Path.[7] On January 11, 2017, Straight Path entered into a settlement with the FCC.[8] Around the same time, Straight Path was considering a sale and its board of directors formed a special committee of independent directors on February 6, 2017 (the "Special Committee"), initially, because IDT was a potential buyer of certain intellectual property assets owned by Straight Path.[9] The independent directors also believed that Straight Path could seek indemnification from IDT under the S&DA for the penalties levied against Straight Path under its settlement with the FCC (the "Indemnification Claim").[10] With the backdrop of the ongoing sales process, the Indemnification Claim became the focus of the Special Committee, which thought the Indemnification Claim may be undervalued by a potential buyer and decided on March 10, 2017 to exclude the Indemnification Claim from the sales transaction.[11]

During calls with a member of the Special Committee on March 14 and 15, 2017, Jonas "expressed anger with the Special Committee's decision to pursue the Indemnification Claim, potentially impacting the auction process, which he thought was in Straight Path's best interests."[12] In summary:

---

[7] *Id.* at *1, *17 ("Defendants effectively concede that [Jonas] was Straight Path's controlling stockholder.").
[8] *Id.* at *9.
[9] *Id.* at *8–9.
[10] *Id.* at *10.
[11] *Id.* at *10–11.
[12] *Id.* at *11.

[Jonas] did not want the Indemnification Claim preserved. In order to push his agenda, he bombarded the Special Committee members with phone calls. He described as "insane" [the Special Committee's counsel]'s reasonable precaution of walling off "the controlling shareholder" from communicating with "his own directors" about a pending self-interested transaction. He threatened to "put it all on Mintz [Levin]"—the law firm where [a Special Committee member] was a partner—when [a Special Committee member] didn't cave in to his demands. He verbally abused the Special Committee during negotiations, calling them "bullshit directors." He made sure that the Special Committee knew, as they went into final negotiations, that he had dissolved his blind trust and retaken direct voting control of Straight Path. Finally, he made the Special Committee believe that he would torpedo the lucrative sale of [Straight Path], if the Special Committee did not quickly settle the Indemnification Claim. This campaign of abuse and coercion led the Special Committee to reasonably conclude that it had to settle the Indemnification Claim on [Jonas'] terms or risk an even less favorable outcome for [Straight Path].[13]

On March 29, 2017, during in person negotiations that included Jonas, the Special Committee agreed to settle the Indemnification Claim and "capitulated to [Jonas'] $10 million figure."[14] The Special Committee was also aware at the time that resolving the Indemnification Claim could lead to a smoother sale process for Straight Path.[15] Later, on May 11, 2017, Straight Path executed a merger agreement with Verizon.[16]

---

[13] *Id.* at *18.
[14] *Id.* at *13.
[15] *Id.* at *12.
[16] *Id.* at *14.

The original complaint in this matter was filed not long after on July 5, 2017, with an amended complaint filed on August 29, 2017.[17] Plaintiff's counsel took on its engagement and worked "on an entirely contingent basis."[18] In a Memorandum Opinion issued on June 25, 2018, I denied Defendants' Motions to Dismiss.[19] I certified Defendants' interlocutory appeal of that decision on July 26, 2018,[20] which was then affirmed by our Supreme Court on February 22, 2019.[21] The parties proceeded to discovery. On October 14, 2020, Plaintiff Ardell Howard moved to intervene, which I granted.[22] Defendants filed motions for summary judgment, which I denied by Memorandum Opinion issued on February 17, 2022.[23] At that point, I deemed the previously filed, briefed, and argued Class Certification Motion submitted.[24] One of the original two plaintiffs withdrew its request to serve as class representative on March 10, 2022.[25] I continued the Class Certification Motion with

---

[17] *Id.* On July 24, 2017, I denied expedition and consolidated related matters into this action. *Id.*

[18] Pl.'s Opening Br. Supp. Mot. Award Att'ys' Fees 29, Dkt. No. 787 ("Pl.'s OB").

[19] *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2018 WL 3120804 (Del. Ch. June 25, 2018). In an earlier Letter Opinion, issued on November 20, 2017, I had found the matter was not yet ripe as the complaint sought "redress for direct claims of stockholders arising from the merger, and does not seek to enjoin the merger," which had not yet closed. *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2017 WL 5565264, at *3 (Del. Ch. Nov. 20, 2017).

[20] *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2018 WL 3599809 (Del. Ch. July 26, 2018).

[21] *IDT Corp. v. JDS1, LLC*, 206 A.3d 260 (Del. 2019).

[22] Tr. of 7.20.21 Ct.'s Ruling on Mot. to Intervene and Scheduling Conf. 4:2–6:16, Dkt. No. 498.

[23] *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2022 WL 484420 (Del. Ch. Feb. 17, 2022).

[24] *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2022 WL 728844, at *4 (Del. Ch. Mar. 11, 2022).

[25] *Id.*

respect to the other original plaintiff by Memorandum Opinion issued the following day on March 11, 2022,[26] but denied their request to be appointed class representative on May 16, 2022, for reasons not here pertinent.[27] However, at the same time I approved Plaintiff Howard as lead plaintiff/class representative.[28] Class certification was then approved by Memorandum Opinion issued on June 14, 2022.[29] This synopsis perhaps fails to convey the breadth of this litigation (not included above are various attempts at mediation, a partial settlement with another defendant,[30] an evidentiary hearing regarding class representation, and an abundance of motion practice). After five years of hard-fought litigation, this matter went to trial over two five-day segments, beginning on August 29 and December 5, 2022.[31]

In my post-trial Memorandum Opinion, issued October 3, 2023, I found that Jonas' interference with and actions towards the Special Committee were a violation

---

[26] *Id.* at *9.

[27] Tr. of 5.16.22 Tel. Post-Evid. Hr'g Rulings of the Ct. 31:12–13, Dkt. No. 606.

[28] *Id.*

[29] *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2022 WL 2236192 (Del. Ch. June 14, 2022).

[30] Davidi Jonas (Howard Jonas' son) was the CEO and chairman of the board of Straight Path from the spin-off until the merger with Verizon. *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2023 WL 6399095, at *3. Davidi Jonas, previously a Defendant in this action, reached a settlement in principle with Plaintiff to settle the claim against him for $12.5 million in cash on June 20, 2022. Stipulation and Agreement of Settlement, Compromise, and Release with Def. Davidi Jonas 9, Dkt. No. 648. I approved this settlement at a settlement hearing held on December 22, 2024. Tr. of 12.22.22 Partial Settlement Hr'g and Rulings of the Ct. 11:21–12:21, Dkt. No. 751. In connection with this partial settlement, Plaintiff requested an "all-in" award of attorneys' fees and expenses to her counsel of $3,375,000 from the settlement amount, which I approved. *Id.* at 15:13–16:12.

[31] *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2023 WL 6399095, at *15.

of his duty of loyalty to the minority shareholders of Straight Path.[32]  However, I found that "the Indemnification Claim was not viable, and the price paid to release the claim was not unfair, because if the asset had been held in trust for the minority, it would be valueless."[33]  I also separately performed a valuation of the Indemnification Claim (in a hypothetical fair, uncontrolled negotiation of a release of the Indemnification Claim), which resulted in a fair value below the $10 million coerced settlement.[34]  As a result, I found Jonas liable to pay the class only nominal damages.[35]

### B.  Procedural History

As noted above, this Court issued a post-trial Memorandum Opinion on October 3, 2023.  Plaintiff filed a Motion for an Award of Attorneys' Fees on April 1, 2024.[36]  After the exchange of briefing, I heard oral arguments on the Motion on July 22, 2024.[37]

---

[32] *Id.* at *32.
[33] *Id.* at *27.
[34] *Id.* at *31.
[35] *Id.* at *32.
[36] Pl.'s Mot. Award Att'ys' Fees, Dkt. No. 787.
[37] *See* Tr. of 7.22.24 Oral Arg. Re Pl.'s Mot. Award Att'ys' Fees, Dkt. No. 800.

## II. ANALYSIS

Plaintiff's Motion for an Award of Attorney's Fees is currently before me. I found in my post-trial Memorandum Opinion that Defendant Howard Jonas breached his duty of loyalty to the minority stockholders of Straight Path:[38]

> [Jonas] used his controller position to bully the Special Committee into release of the Indemnification Claim at a price he unilaterally determined to be proper. Absent that bullying, the Committee would have retained the Claim as a stockholder asset or engaged in a fair negotiation for a release. Instead, it was forced to capitulate to [Jonas'] demands. While the price was fair, the transaction was tainted by [Jonas'] flagrant breach of duty, and was not entirely fair.[39]

Plaintiff's attorneys litigated this action on a contingency basis.[40] However, having found Jonas liable to pay only nominal damages, there is no substantive damage award to the class of minority stockholders from which Plaintiff's attorneys can seek to recover their lodestar. As a result, Plaintiff asks that I apply an exception to the American Rule (that "each party is normally obliged to pay only his or her own attorneys' fees, whatever the outcome of the litigation" and which Delaware follows)[41] and award her attorneys $9.5 million in fees.[42] Plaintiff suggests that three recognized exceptions to the American Rule are applicable here. She points to the pre-litigation actions of Defendant, Howard Jonas, and surmises bad faith conduct;

---

[38] *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2023 WL 6399095, at *32.
[39] *Id.* at *31.
[40] Pl.'s OB 29.
[41] *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 545 (Del. 1998).
[42] Per Plaintiff, this is little more than a third of the fee implied based on time expended.

9

alleges that the litigation conferred a non-monetary benefit on Plaintiff's class; and argues that equity should result in her counsel receiving a fee. I consider each, below.

### A. Legal Standard

The Delaware Supreme Court has consistently affirmed the American Rule under which both sides pay their own attorneys' fees.[43] This is notwithstanding the fact that a successful party, under the Rule, fails to be made entirely whole, to the extent of its fees. There are reasons, beyond the scope of this Memorandum Opinion, for the wisdom of retaining the American Rule.[44] The Rule is applied, generally speaking, even in corporate class actions, where entrepreneurial plaintiffs' firms pursue actions on a purely contingent basis. The trial court has the discretion to shift fees in a number of situations, as discussed below; the American Rule, however, remains the default. The decision whether to shift fees depends on the equities of the particular action. It also invokes a balance of incentives for future litigation. Too liberal an application of fee shifting, no doubt, would encourage unwholesome and picayune litigation; the opposite would result in meritorious litigation being foregone. While our Supreme Court recognizes the Court of Chancery's "broad

---

[43] *E.g.*, *Montgomery Cellular Hldg. Co., Inc. v. Dobler,* 880 A.2d 206, 227 (Del. 2005) ("Delaware follows the 'American Rule,' whereby a prevailing party is generally expected to pay its own attorney's fees and costs.").

[44] For instance, that routine fee-shifting may discourage wholesome litigation, particularly in cases where an imbalance of resources between parties exists.

discretionary power to fashion appropriate equitable relief,"[45] our Courts "have been cautious in granting exceptions" to the American Rule.[46] Circumstances where the Court of Chancery's equitable power may be brought to bear to award fees outside of express statutory authority or contractual fee-shifting include:

> (1) the presence of a "common fund created for the benefit of others;" (2) where the judge concludes a litigant brought a case in bad faith or through his bad faith conduct increased the litigation's cost; and (3) cases in which, although a defendant did not misuse the "litigation process in any way, ... the action giving rise to the suit involved bad faith, fraud, 'conduct that was totally unjustified, or the like' and attorney's fees are considered an appropriate part of damages." More generally, a Vice Chancellor may award fees in the limited "circumstances of an individual case [that] mandate that the court, in its discretion, assess counsel fees 'where equity requires.' "[47]

Plaintiff's fee request here is most strongly grounded on the exception where "the action giving rise to the suit involved bad faith, fraud, conduct that was totally unjustified, or the like,"[48] which I refer to herein as pre-litigation bad faith conduct. As an alternative basis for an award of attorneys' fees, Plaintiff proposes the common benefit doctrine. Plaintiff also seeks shelter in the catch-all exception which may abide in specific cases "where equity requires."

---

[45] *William Penn P'ship v. Saliba*, 13 A.3d 749, 758 (Del. 2011).
[46] *Weinberger v. UOP, Inc.*, 517 A.2d 653, 654 (Del. Ch. 1986).
[47] *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund*, 68 A.3d 665, 687 (Del. 2013) (internal citations omitted).
[48] Defendants raise the question of whether "this exception survives the Supreme Court's guidance in *RBC*," in reference to *RBC Cap. Mkts., LLC v. Jervis*, 129 A.3d 816 (Del. 2015). IDT Defs.' Opp'n to Pl.'s Mot. Award Att'ys' Fees at 21, Dkt. No. 798. I find below that this exception does not apply here, and thus I need not reach that issue.

11

## B. *Jonas' Pre-Litigation Conduct Does Not Warrant Fee Shifting*

In cases of outrageous pre-litigation conduct by fiduciaries, our courts have been willing to shift fees onto the tortfeasor, under a theory that such fees may be looked at as part of the damages that flow from the equitable tort, and serve as an appropriate disincentive to such behavior. Our Supreme Court in *William Penn Partnership v. Saliba* noted in the context of fee shifting that "potentially harsher rules come into play and the scope of recovery for a breach of the duty of loyalty is not to be determined narrowly . . . . The strict imposition of penalties under Delaware Law are designed to discourage disloyalty."[49] However, failure to prove "entire fairness[] . . . does not necessarily establish that [a] defendant[] acted in bad faith as that term is defined for fee-shifting purposes."[50] As the Court of Chancery observed in *Ryan v. Tad's Enterprise* when evaluating a request for fee shifting based on pre-litigation bad faith conduct, a plaintiff has the "burden of persuading the Court that [a] defendant[] acted with *scienter* sufficient to warrant a finding of bad faith," and "the conduct at issue must rise to a 'high level of egregiousness.'"[51] As the Court explained, "[t]hat a fiduciary is found to have breached his duty cannot, without more, justify a fee-shifting award . . . . [o]therwise, every adjudicated breach of

---

[49] *William Penn P'ship*, 13 A.3d at 758 (Del. 2011) (quoting *Cantor Fitzgerald, L.P. v. Cantor*, 2001 WL 536911, at *3 (Del. Ch. May 11, 2001)).
[50] *Ryan v. Tad's Enters., Inc.*, 709 A.2d 682, 706 (Del. Ch. 1996).
[51] *Id*. (internal citation omitted).

fiduciary duty would automatically result in a fee award."[52]   Indeed, "Delaware courts have eschewed adopting bright-lines rules for bad faith fee-shifting."[53]

Plaintiff argues that Jonas' behavior was egregious, and that his conduct was worse than in other cases where our court has shifted fees for pre-litigation bad faith conduct.  Plaintiff offers *Saliba v. William Penn Partnership*,[54] *In re Nine Systems Corporation Shareholders Litigation*[55] and *Cantor Fitzgerald, L.P. v. Cantor*,[56] as particularly instructive.

In *Saliba*, the court awarded attorneys' fees to plaintiffs where the defendants, managers of a limited liability company, "breached their duties as fiduciaries by failing to make full and timely disclosures to plaintiffs and by manipulating the sales process related to [a property] for the individual defendant's self-interested purposes."[57]  That is, the plaintiffs sought to "benefit themselves personally, rather than to insure that [the limited liability company]'s sole asset was sold pursuant to a fair process that would protect the interests of all of [the limited liability company]'s members."[58]  On appeal, our Supreme Court noted the plaintiffs "were left without a typical damage award because the Court's appraisal of the property came in at a

---

[52] *Id.*

[53] *ASB Allegiance Real Est. Fund v. Scion Breckenridge Managing Member, LLC*, 2013 WL 5152295, at *9 (Del. Ch. Sept. 16, 2013).

[54] 2010 WL 1641139 (Del. Ch. Apr. 12, 2010), *aff'd,* 13 A.3d 749 (Del. 2011).

[55] 2015 WL 2265669 (Del. Ch. May 7, 2015).

[56] 2001 WL 536911 (Del. Ch. May 11, 2001).

[57] *Saliba v. William Penn P'ship*, 2010 WL 1641139, at *1.

[58] *Id.*

value lower than the sale price."[59]  Our Supreme Court affirmed the trial court, stating "[b]ecause the Court of Chancery based its decision to award attorneys' fees and costs on the faithless conduct of the [defendants], the decision was neither arbitrary nor capricious. The Court of Chancery based its decision on conscience and reason by upholding Delaware law and discouraging disloyalty." [60]

In *Nine Systems*, the court found, post-trial, that the defendants "breached the duty of loyalty . . . by conducting a self-interested recapitalization," but "monetary damages were not available because the pricing was fair and [p]laintiffs suffered no quantifiable damage."[61]  The court highlighted its findings that the defendants "(1) 'utter[ly] fail[ed] to understand th[eir] fiduciary relationship' with [p]laintiffs, (2) 'knowingly excluded' from the decision-making process a director who represented a group of minority shareholders, (3) effected the recapitalization through a 'grossly inadequate process,' and (4) 'sought to avoid full and fair communications with the [c]ompany's stockholders.'"[62]  While the court mused that failure to follow a credible valuation process could be explained by the company's limited financial means, there could be no such benefit of the doubt with regard to the "failure to disclose the recapitalization and its consequences to the shareholders or the lack of

---

[59] *William Penn P'ship v. Saliba*, 13 A.3d at 758.
[60] *Id.* at 759.
[61] *In re Nine Sys. Corp. S'holders Litig.*, 2015 WL 2265669, at *1.
[62] *Id.* at *2.

14

information about the [c]ompany's activities and relocation over several years."[63] This context was enough to satisfy the court that the pre-litigation conduct qualified for the pre-litigation bad faith conduct exception.[64] The court also noted the "broader, unusual circumstances" supported fee shifting, "namely, [p]laintiffs held reasonable concerns about the recapitalization, [d]efendants' concealment of information hindered pre-merger legal action, and [p]laintiffs succeeded in showing that [d]efendants breached their duty of loyalty."[65]

In *Cantor Fitzgerald*, the court "ruled that the defendants, in operating a competing business venture, committed an 'egregious breach of the partnership agreement' that violated their duty of loyalty to the partnership."[66] The court awarded attorneys' fees to the plaintiffs and clarified in response to post-trial motions that the intent of the award was "as a measure of damages," but "traditional fee shifting would still be appropriate."[67] Having found that the plaintiffs were harmed "in several identifiable, but inherently unmeasurable, ways," the court settled on fees and expenses as "an adequate remedy that would make this plaintiff whole but would, at the same time, escape the peril of over-harshly punishing the defendants."[68] The court went on to review the award under the pre-litigation bad

---

[63] *Id.*
[64] *Id.*
[65] *Id*. at *3.
[66] *Cantor Fitzgerald, L.P. v. Cantor*, 2001 WL 536911, at *1.
[67] *Id.* at *2.
[68] *Id.* at *3.

faith conduct exception to the American Rule, noting that "[n]o single definition for 'bad faith' in this context exists and each determination will turn on the special facts of the particular case."[69]  The court's previous decision in the case had made clear that "the defendants' behavior constituted an egregious breach of the partnership agreement and their duty of loyalty" and they "knew, from the outset, that their acts were designed to challenge directly the core business of the plaintiff and that those acts were in derogation of the partnership agreement."[70]  Those facts demonstrated to the court that "[those] faithless defendants have acted in 'bad faith'" under the exception to the American Rule.[71]

The common thread in *Saliba, Nine Systems,* and *Cantor Fitzgerald* is the degree of *scienter*; those cases embodied defendant fiduciaries acting to the detriment of those to whom their duties ran, for their own benefit.  Accordingly, to apply this precedent, I must assess Jonas' motivations, something that was less directly at issue in the substantive litigation.  It is true that Jonas acted in a way that was flagrantly a breach of duty.  He bullied the Special Committee, threatening to end their tenure and damage their own careers outside of Straight Path if they stood in his way.  He stood on both sides of the transaction concerning the Indemnification Claim, and effectively unilaterally set the price.  To my mind, however, his motive

---

[69] *Id.* at *4.
[70] *Id.*
[71] *Id.*

for doing so does not match the egregious self-dealing present in the cases cited above.

Plaintiff has previously noted that IDT, the entity against which the Indemnification Claim ran, was the Jonas family business, and that Jonas controlled IDT and had installed his son as CEO.[72]  As the purchase price for Straight Path soared to windfall levels for its stockholders, the Indemnification Claim, if viable, grew proportionally, toward a figure that would doom IDT.  According to Plaintiff, then, the breaches of duty indulged in by Jonas were solely for the benefit of his family and its IDT interests, in flagrant disregard of the interests of stockholders of Straight Path.[73]  I acknowledge that Jonas' interests in the Indemnification Claim transaction were conflicted in this regard, and "sufficient to establish a non-ratable benefit" for purposes of applying entire fairness review to such transaction.[74]  The analysis for purposes of fee shifting cannot end there, however.  Jonas' own financial interest in Straight Path were greater than in IDT.[75]  Straight Path, created as a low-value vehicle to monetize patent claims and as a holder of broadcast frequencies of marginal value as of the time of spin-off,[76] was suddenly in the midst of a bidding war for the latter that can only be described as an unexpected windfall for its

---

[72] Pl.'s Opening Post-Trial Br. 2, 9–11, Dkt. No. 763.
[73] Id. at 2, 58, 128.
[74] In re Straight Path Commc'ns Inc. Consol. S'holder Litig., 2023 WL 6399095, at *17.
[75] Id.
[76] Id. at *5.

stockholders. I find credible the evidence at trial that part of Jonas' motivations for removing the indemnification asset from Straight Path was his fear that attempting to preserve the asset via trust—which would require the buyer's cooperation—would create a distracting issue for the sale of Straight Path that could damage the final auction price. Jonas also believed—correctly, as I have found—that the litigation asset was not, ultimately, of value. In other words, Jonas believed that he knew better than the Special Committee what was in the interests of both Straight Path *and* IDT; based on that belief, he bullied the Special Committee into giving up the Indemnification Claim, against its business judgement, and at a price set without any semblance of a fair process. Having acted on his conviction that he knew best, superseding the will of the Special Committee, he was subject to entire fairness, including making stockholders whole for any unfairness in price.

In other words, Jonas flagrantly breached his duties with respect to the indemnification asset. I do not find, however, that Jonas *believed he was acting against the interests of Straight Path stockholders*. That does not excuse his actions in regard to his equitable tort, and the fact that his instincts proved correct once the viability of the Indemnification Claim was litigated is no exoneration. His behavior was egregious. It does not, to my mind, evidence *scienter* on the part of Jonas comparable to those examples in our case law where fees have been shifted based on pre-litigation bad faith conduct, where fiduciaries sought to advance their own

18

interests solely. I find the exception to the American Rule unwarranted on that basis, therefore.

Of course, our Supreme Court could impose fee-shifting in any case where a defendant is found to have breached the duty of loyalty. That is not my understanding of the law, and it would change the incentives that obtain under our current scheme. In any event, such a bright line rule should not be imposed by a trial court.

### C. Equity Does Not Otherwise Require Fee Shifting

The equity exception to the American Rule serves as a catch-all exception to the rigors of that Rule, where a court determines that injustice would result should it apply. Plaintiff's argument that equity requires fee shifting is, as I understand it, that Plaintiff's attorneys, who have worked on a contingent basis, will be left empty handed, despite having prevailed in their efforts to demonstrate a breach of duty of loyalty. Plaintiff reasons this will discourage the policing of corporate misconduct by intrepid plaintiffs' counsel that Delaware fosters.[77] Plaintiff is correct about the incentive effect of more or less liberality in shifting fees; this of course influences the quantity and quality of corporate litigation. But that is not itself an invocation of equity; and equity does not, in my view, demand fee shifting.

---

[77] Pl.'s OB 29.

After a similarly protracted and long fought litigation in *In re Oracle Corporation Derivative Litigation*, I denied the plaintiffs' application for attorneys' fees earlier this year, finding no corporate benefit sufficient to justify the application.[78] Plaintiffs' counsel in *In re Oracle* worked on a contingency business model, which I noted was to "sue derivatively, on a contingency basis, accept the freight in a losing case, while seeking a multiple of a lodestar in a successful one."[79] The action here was brought directly, but similarly on a contingency basis, and the business model remains the same. The specific result here, a finding of a breach of a fiduciary duty without an award of damages from which to recover a lodestar, is unusual, but fits within that business model as a known risk. I do not find equity sufficiently invoked to justify imposing fee shifting.

As laid out in wearing detail in the Background section of this Memorandum Opinion, this was a hard-fought litigation. It involved vindication of Plaintiff's novel theory that what is facially an underpayment claim survived a merger. That vindication came upon interlocutory appeal. Many other difficult issues were ultimately surmounted by Plaintiff's counsel, through vigor, skill and tenacity. The case involved, surely, millions of dollars in time and costs to prosecute.

---

[78] 2024 WL 472396, at *8 (Del. Ch. Feb. 7, 2024).
[79] *Id.* at *2.

It also cost, no doubt, a large amount to defend. The result was a finding that Jonas had acted in breach of his duties, but had ultimately caused no monetary harm to the class. Under the business model that Plaintiff's counsel accepted, no fee shifting is available; equity is not, to my mind, offended by the result.

### D. The Common Benefit Doctrine Does Not Apply

The common benefit doctrine is the fundamental exception to the American Rule. It arose from litigation by beneficiaries of trusts against trustees; [80] where all beneficiaries have shared the fruits of the litigation, equity requires that the plaintiff beneficiary not bear the litigation costs alone. The doctrine has been expanded, and has particular force in corporate litigation that benefits the entity or a class of stockholders. Plaintiff has proposed the common benefit doctrine as an alternative rationale for fee shifting, which I briefly address now. Simply put, Plaintiff's litigation was not on behalf of the entity, Straight Path, which is no longer owned by Plaintiff or the class of stockholders she represents. As for those stockholders, they

---

[80] "It is a general principle that a trust estate must bear the expenses of its administration. It is also established by sufficient authority, that where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts." *Trustees v. Greenough*, 105 U.S. 527, 532–33 (1881).

21

received no tangible benefit from the litigation. The common benefit doctrine is simply inapplicable.[81]

Plaintiff asserts it has conferred a benefit on the class of Straight Path minority stockholders because "[h]olding a fiduciary accountable for a loyalty breach is a vindication of stockholders' rights."[82] Plaintiff also argues that Jonas is involved in other public companies, upon his dealings with which this finding of breach will have a salutary effect.[83] But former stockholders of Straight Path, who have been informed via the litigation that Jonas coerced the settlement of the Indemnification Claim for a fair price, are unlikely to have received a tangible benefit thereby. Jonas is no longer a fiduciary for Straight Path. And the class has no more interest in whatever moderating effect this litigation has on Jonas' business practices, going forward, than does the general public. There is simply no common benefit here created by the litigation. Again, shifting fees onto an equitable tortfeasor could be a default in exception to the American Rule, but such is not our law.

## III. CONCLUSION

For the reasons stated above Plaintiff's Motion for an Award of Attorney's Fees is DENIED.

---

[81] Among the other reasons this exception is inapplicable is that the fees sought would not come from the entity or those minority stockholders who Plaintiff asserts have benefited, but directly from Jonas.
[82] Pl.'s OB 34.
[83] *Id.* at 35 n.129.

22